Mr. Justice Thompson
 

 delivered the opinion of the Court. — »
 

 This case comes up from the Circuit Court of the. District ©f Columbia, upon a writ .of error. It was an 'action against the defendant Hagner, on a special agreement to purchase of the plaintiffs two lots of ground in the city of Washington. The
 
 *462
 
 Court below, on the prayer of the defendant, instructed the jury, that upon the evidence given on the part of the plaintiffs, though found by them.to be true, would not entitle the plaintiffs to recover, in this action, the purchase money for the lots mentioned in the declaration. Under which instruction a verdict was found, and judgment rendered for the defendant;' to reverse which, -the present writ of error has be,en brought.
 

 The special agreement as stated in the declaration, is substantially, that'on the'25th of April, 1818, it was agreed between the plaintiffs and defendant, that the plaintiffs'should sell to defendant lots No. 1 and 2, in square 141, in the city of Washington, the property of the plaintiffs, at and for. the price of twenty-five cents, for each and every square foot, contained in' said lots; and that defendant agreed to purchase the lots, at that price, and to pay for the same, when thereunto required by the plaintiffs ; setting out the quantity of land and amount of the purchase monéy, with an averment, that the plaintiffs had full power and authority to make the sale, and that they then were, and ever since have been fully competent and able to make and deliver, a good and. sufficient deed, conveying to the defendant a good title in fee, to said lots. And that afterwards, on or about the 8th day of May, 1821, the defeud-ant declared and gave notice to the plaintiffs, that he considered the agreement and sale void, and would not comply with the same, and discharged the plaintiffs from, making or causing to be made any deed of conveyance, and the plaintiffs further aver, that afterwards, on the 28th September, in the year 1821, they being willing and able to make a conveyance of a good title to said lots, offered so to do, and requested the'defendant , to pay the purchase money, according to the terms of the agreement, which he refused to do. The first inquiry that naturally arises, is, whether any contract was in point of fact concluded between the parties. It has been objected, that.it does not appear that General Mason,- through whom, in behalf of the bank, the negotiation was carried on, had any authority for that purpose. There is certainly great plausibility in this objection. There is no evidence, expressly showing such authority. But this perhaps ought to be considered as having been waived by the defendant; as that part of the correspondence from which the contract is supposed to be collected, was carried on with him in his official character of President of the Bank. And the defendant, at no time, puts his objection to carrying the contract, (if any was made,) into execution, upon the want of authority in Mason, to make it.
 

 The contract is alleged, in the declaration, to- have been made on the 25th of April, 1818, and the letter of Mason, of
 
 *463
 
 ihat date, and signed by him, as President of the Bank, has been considered as closing the pontract. This letter is as follows •
 

 ' “ I have this day sold to Peter. Hagner, of Washington City, lots No. 1 and 2 in square 141 in Washington City, and belonging to the Bank of Columbia, at- twenty-five cents per square foot; payable at such
 
 periods
 
 as the bank may approve.”
 

 The time of payment being left to the option of the bank, it is said, that in 'judgment of law, the purchase money, was payable on demánd; -and this is no doubt true, if the bank had then closed the negotiation, and apprized the defendant that such was their determination, as to the payment of the purchase money, But this was not done; and the terms of the letter look to, and necessarily imply some further negotiation. The. payment was to be at such
 
 periods
 
 as the bank may
 
 approve.
 
 It was therefore clearly understood to be payable, by instalments; and the periods to be approved by the ban^, which "would'seem-to leave - the subject open to propositions tp be made on the part of Hagner, and submitted to the bank to be approved. And that such was the understanding of the parties,, is evident from the letter written by the. defendant, two days after, April 27th, 1818j to the President of the bank, as follows ; ■
 

 “
 
 Itwould be desirable to me to have the payments to make • for the lots No. 1 and 2 in square 141 purchased of you by me on Saturday, at 25 cents per square footpin proportions, and at
 
 periods,
 
 to be met by my income. I accordingly propose that the whole amount of the purchase money be divided into six quarterly payments, the first- to be on the first of October next. If this be
 
 approved
 
 by the. bank, I will give my notes, and I presume the bank will have no objections to give nie a deed. If however it be preferred, I will'bind myself to. pay the money, at the -times -stated above, an cl, receive a bond of conveyance, conditional to give a full title, when the money is paid. Do me the favour to-send me, in return, a memorandum of our agreement on Saturday.” Upon .this letter was written in pencil, by Genefa) Mason “accept, interest on each note as it ■ becomes due.”
 

 Whatever, therefore, might have been the right- of the bank ' to have closed the contract, in the terms of the letter of the 25th of April, it was certainly waived by an acceptance of the modification, contained in'the letter of the 27th of April. Nor would any contract seem to be closed by this-letter. It contained two distinct propositions, by the defendant; the one to give his notes for the purchase money, payable in six quarterly payments, the first to be made on the 1st of October then next, and
 
 *464
 
 take' 3. deed from-the bank: the other, to bind himself to pay the mOney at the times stated, and take a bond for a deed, to be given when the whole purchase money was paid. This necessarily required some further answer from the plaintiffs,' notj only to signify their electibn between the propositions ; but fb. do some further act, in confirmation of such election. Either to give the deed, or a bond for the deed. The note in pencil, made by the President of the bank, upon the letter, could not fairly be understood, as implying any. thing more than an acceptance of the proposition to pay by instalments; and settling the terms of the contract, to be concluded between the parties upon the bank’s electing, which proposition tó accept, as to the mode’of concluding the contract. But the contract could not be said to be ■ consummated, until such election'was made and the writings executed.'
 

 Here the matter rested for nearly *hree years,; without- any .thing being done’ on the part of the bank to close the contractu or to intimate, that they considered any contract in force, • in relation to the purchase-; and, that, not until after the defend- . ant had given them formal notice, that he considered the agreement void, and at an end.
 

 And he certainly had very good reason to think the bank.'so considered it. Or that no agreement had in fact ever been f «1- • eluded.- For the defendant' by his letter of the 7th.of Octooer 1818, gaye the plaintiffs notice that he was prepared
 
 to pay
 
 the first instajment; which according to his proposition fell due bn the fir?t of that month; and requesting of them a bond for á deed ; to which no answer appears to have been given, nor any one of the instruments paid or demanded ; although-the whole purchase money became payable .by the-first of January 1820, according to the proposed terms of the contract.
 

 ■ Upon this view of the case, it is at least very doubtful, whether any contract was concluded between the parties; and if the cause turned upon this point alone, the judgment of the .Court, below would be affirmed, by a division of opinion in this Court. But, as there are other.questions .in the cause, the determination of which leads to the same result, and upon which no difference of opinion exists, it has been thought proper to notice them.
 

 Admitting, then, that a contract was .entered into-Detween the parties, the -inquiry arises, whether the plaintiffs have shown such a performance on their part, as will entine them, in a’Court of Law, to sustain-an action'for'the recovery-of the purchase money.
 

 - In contracts of this description, the, undertakings of the respective parties are always considered dependent, unless a con
 
 *465
 
 trary .intention clearly appears. A different construction would-in many cases lead to the greatest injustice, and a purchaser .might have payment of the consideration money enforced upon 'him, and yet be disabled from procuring the property, tor which he'paid it..
 

 Although many nice distinctions- are to be found in the books,' upon the question, whether the covenants or promises of the respective parties to the contract, are to be considered independent, or -dependent-; yet it is evident, the in"clination of Courts has strongly-favoured the latter construction, .as being -obviously the most just. The seller ought not td be compelled to part with his property, without receiving. the consideration: nor the purchaser to part with his money, without an equivalent in return.. Hence, in such cases, if either a vendor or a vendee wish to compel the other to fulfil his contract, he must make his part of the agreement precedent, and cannot' proceed, against the Other without an actual perform-, anee of "the agreement, on his part, or' a- tender and refusal. And an averment, to that effect, is always made in the declaration upon contracts, containing dependent undertakings, and ..thgt averment must be supported by proof. And that the one. now before the Court, must be considered a contract of this description,' cannot admit of a doubt.
 

 The -plaintiffs, however, aver that they were willing and able to make a conveyance of a good' title, and offered so to do. on the. 28th day of September 1821; but this was only the day before the suit was commenced, ■ and nearly two years after the time fixed for performance; and they set up, as an excuse for the delay in making the tender of a deed, the notice received from the defendant on.the-8th of May 1821; that he considered the ágreement void, and -refused to carry it into effect.-
 

 The time fixed for performance, is, at law,- deemed Of the essence of the contract And ift he, seller is not ready and able to perform his part of the agreement, on that day, the purchaser may elect to consider the contract at an-end. In
 
 Sugden’s Law of Vendors, 9,75,
 
 it is said — “ The general opinion has always been, that the day fixed -was -imperative on the parties at law. This was so laid down by Lord Kenyon; and has never been doubted in practice. ■ .The contrary rule would lead' to endless difficulties,- if in every case it must-be referred to a jury to consider, whether the act.was done within a reasonable time.; apd the precise contract of the parties would be avoided, in order to introduce an uncertain rule, which would lead to endless litigation. But equity, which- from its peculiar jurisdiction, is enabled to examine into the cause of delay in completing a -purchase, and to ascertain how far the day named was deemed 'material by the -parties, will, in certain cases.' carrv the agree- '
 
 *466
 
 ment intoi'execution, although the time appointed ha-s elapsed. But he justly adds, perhaps there is cause to regret, that even equity assumed thjs power of dispensing with the literal performance of contracts, in cases liké those.
 

 It was urged, at the bar,’that the rule on this, subject was the same at law and in equity* and the case of Thompson
 
 vs.
 
 Miles, (1
 
 Esp. Ca,
 
 184,) was referred, to in support of this proposition. And it is 'true, that some of the remaks which fell from' Lord Kenyon, on the trial of that catise, would seem to countenance such an opinion. For he permitted the seller to prove, he had a good title; although thepower.of making that title was attained after the action was rought.
 

 This was certainly.-going great ieng . s for a Court of Law, But it ought to be observed, that in t, t case no time appears to have been fixed for completing the contract; and an application for thé title had not been made by the purchaser, previous to the action brought by the vendor for breach of the contract; which it.seems was considered necessary, in that case. But, that Lord Kenyon did not mean to be understood, as. holding that the evidence would have been admissible to sustain the action, if there had been a time fixed for the perform- . anee of the.. contract, is very evident from his doctrine in-numerous other cases before him. Thus in the case of Bury
 
 vs.
 
 Young (2
 
 Esp. Ca.
 
 641,) he says, a seller of an estate ought to be prepared to produce his. title deeds at the particular day. That a Court of Equity will under particular circumstances, enlarge the time. And in the cáse of Cornish
 
 vs.
 
 Rowley (1
 
 Wheaton Selwyn
 
 137,) the action was for money had and received, to reebver back money paid as a deposit on an agreement for the purchase of an estate, the defendant having failed to make out a good title,
 
 on the day
 
 when the purchase was to be completed; the counsel for the defendant said they were ready to make out a good title; to which Lord Kenyon replied. “ As to the sentiments I have long entertained relative to the purchase of rea.’ estate, I find no reason for receding from timin'; they have been confirmed by conversing with- those whose authority is much greater than mine. The vendor must be prepared to make out a good title
 
 on the day
 
 when the title is to become completed.” On which the counsel for the defendant asked, “Dol understand your Lordship to say, that though* the defendant .can
 
 now
 
 infalce out a good, title, yet, as that, title did not form a part of-the abstract, the plaintiff may avail himself-of that circumstance.” ' To -which Lord Kenyon answered, Hh„certainly may; and avoid the contract:” and he directed the./jhry to find a verdict for the plaintiff, for the deposit money.
 

 In the ease of Davis
 
 vs.
 
 Hone (2
 
 Sch. & Lef.
 
 347) Lord Redesdale said, á Court of Equity frequentlyid'ccrces specific per
 
 *467
 
 foritiance, when the action at ¡aw has been" lost by the default of the very party seeking the specific performance. To sustain, an action at law, performance must be averred, according to the. very terms of the contract.' And again in. the cáse of Lennon
 
 vs.
 
 Napper (2
 
 Sch.
 
 &.
 
 Lef.
 
 684) lie reiterates the same doctrine, that Courts of Equity in all cases of contracts for lands, have been in- the habit of relieving, where the party from his own neglect, had suffered a lapse of time, and from that and other' circumstances, could not sustain an action to recover damages, at law; for, at law, the party plaintiff, must have strictly performed his part of the contract. - And in the case of Wilde
 
 vs.
 
 Fort, and others, (4
 
 Taunt.
 
 334,) the rule is recognised, that if the vendor‘of an estate at auction, does not show • a clear title by the day specified, the purchaser may recover' back his deposit, and rescind the contract; without waiting to see whether the vendor may ultimately be able to establish a good title or not. A purchaser is not bound to accept a doubtful title.
 

 From these authorities it may be laid down as. a settled rulé, that at law, to entitle the vendor to recover the purchase money, he must aver in his declaration a performance of the contract on his part, or an offer to perform at the day specified for the performance. And this averment must be sustained by proofs, unless the tender has been waived by the purchaser. .
 

 The time fixed for-the performancé of the contract,-in this ‘ case, must be understood to have been the-1st of January 1820. The payment of the consideration money was to have been completed.on that day, and no part of it having been paid, the defendant had a right to abandon his contract, .unless the pláintiffs were then ready and offered to perform, on their part, of-■'which there was no evidence, whatever, offered upon the trial. . They have attempted, however, to show, that a tendel of a deed was rendered unnecessary, by reason of the letter of the defendant of the 8th of May 1821; in which he gave notice of rescinding the contract. But this letter can have no such effect.' It was written sixteen months after the time fixed for the delivery of the deed, and when the defendant had a right to rescind the contract. If before the period had. arrived, when the deed was to be delivered, the defendant had declared he would not receive it, and that he intended to abandon the contract, it might have dispensed with the necessity of atender, as the conduct of the defendant might in such case, have prevented the act from being done; and he who prevents a thing from being done, .shall never be permitted to avail himself of the non-performance, which he himself has occasioned. But that rule can never apply, except in cases where the act which
 
 *468
 
 is construed into a waiver, occurs- previous to the time fixed . for performance.
 

 The possession taken of the lots by the defendant, could,' at ' most, only, be considered a circumstance from which to infer, that he considered the contract-closed; but could not deprive him of the right of relinquishing it-, and restoring the possession, if the plaintiffs were unable to . make a-title to him, or neglected tó do it. The possession was.taken, doubtless, under a" belief that the contract would be performed.by the plaintiffs, and a full title conveyed to him; but if the contract was unexe-cuted, the defendant had a right to disaffirm it, and.restore the' possession; and would have sustained an action • to recover back the purchase money, had it been paid.
 
 (Sug. on Vend.
 
 173. 183, and cases there cited.)
 

 The plaintiffs have therefore clearly failed to show such a performance, on their part, as- to entitle them, in a Court of Law, to call upon the defendant for payment of the purchase money.
 

 , ; But admitting, that no objection in point óf tipie.lay to the tender of the deeds, the day before the commencement óf the present action; no title Was thereby conveyed to the defendant, or at all events, not such a one as he would at any 'time have been bound to accept. It was a title derived fromTóhn.Tem-pleman, under the deed, of the .'31st of March 1809. Whereas Templeman had previously conveyed the same lots to. the plaintiffs, by his deed of .7th of’March 1807, in trust, with authority to' sell the 3ame for the payment of ¿ debt, due to the bank' and-to pay over to him the supplies," if any there should be. The legal, title to these lots is therefore still in the bank; and may be subject-to the trust declared in the deed, from any thing, that appeared upon the trial; - And .to allow the bank" to-recover the purchase- money, and turn the defendant over to a Court of Chancery, to obtain. a titile, would be going farther than any known .principles in. Courts-óf .Law will warrant; no act whatever haying been done by the plaintiffs, to transfer to the defendant the .title vested in them under the deed of 1807.
 

 To substantiate the present action under such circumstances, would be compelling the defendant to take a law-suit, instead of .the land, for which he contracted.
 

 Judgment ’affixmed> with me.ts.