Mr. Justice Teottee
stated the case, and delivered the opinion of the court.
The facts in the record bring this case completely within the rule laid down by this court in the case of Philip Coleman v. Matthew Rowe, decided at the present .term. The purchase money is here payable by instalments as in that case, and partial payments were made on the note first payable, circumstances which we deem conclusive evidence of the intention of the appellant to pay the money at all events, and to rely upon his remedy at law upon the covenants in the bond. The tender of the purchase money by the vendee, and the demand of the title are the *545 only circumstances which distinguish the present case from that of Coleman and Rowe.
When the payment is to precede the conveyance, or when the covenant to pay and that to make title are mutual and depen-dant, it would seem that the vendor was bound to convey at the time stipulated, upon payment of, or an offer to pay the purchase money, or the vendee may elect to sue upon' the covenant, or to claim a rescisión of the contract. This is stated to be the rule by the supreme court of New York, in Robb v. Montgomery, 20 J. R. 16; and by the Supreme Court of the United States, in the case of the Bank of Columbia v. Hagner, 1 Peters, 465. In the last case, time is said to be of the essence of the contract, and many authorities are referred to by the judge in delivering the opinion, to sustain the doctrine. This, however, is no where stated to be the universal rule, and the time may be enlarged in equity, and it has frequently been done, and the agreement carried into execution, notwithstanding , the action at law was lost by the default or neglect of the vendor. Courts of equity in such cases examine the causes of delay, and ascertain how far the day named was deemed material by the parties. This was so considered in the case of the Bank v. Hagner, and is expressly recognized as the rule by Lord Redesdale, in Davies v. Horne, 2 Sch. & Lef. 347 ; and also in Lennox v. Napper, ibid. 684.
In the case before us, the vendee is not seeking to rescind the contract, but to enforce it, and is asking to have the collection of the purchase money restrained. The answer of Finucane expressly states, that at the time of the contract, the title to the lot was in Dickson and Caldwell, from whom he and Barnes had purchased, and that fact was well known at the time to Greene. The title is in no worse condition now than it was at the date of the contract, and the only reason why it has not been procured, is the delay in obtaining the necessary orders of the probate court, which are rendered necessary by the death of both Caldwell and Dickson. The title bond from Caldwell to Finucane and Barnes, shows an equitable title in them which can be enforced. Under these circumstances, there is good reason for the delay in conveying the title; and from the fact that Green was *546 -put into possession, and has been continued in it without disturbance, we do not incline to think the precise day fixed in the contract for making the deed, was deemed important by the parties. In this predicament of the case, Green has no right to complain of the delay. It is well settled, that if the purchaser is aware of the condition of the title at the time of the contract, equity will not relieve him. This has been so ruled in a variety of cases by the most respectable courts of judicature.. Indeed, it is a principle of universal application. In Craddock v. Shirley, 3 A. K Marshall, 289, the purchaser of slaves applied to a court of equity to be relieved from the payment of the purchase money, on the ground of a failure of title, which fact as the bill alledged, was concealed by the vendor. The answer denied the fraud, and stated that the purchaser was fully acquainted with the condition of the title at the time of the sale, and purchased relying on the warranty of the vendor, and his ability to prevent the success of the adverse claim. In view of these facts, the court say they ha.ve seldom seen a case where there was less pretext for relief in equity. In Miller v. Long, 3 A. K. Marshall, 335, the same principle is recognized, and applied to the case of a contract for a sale of land. This is also the doctrine of the case of Greenleaf v. Cook, 2 Wheat. 13. 13 Sarg. and Rawle, 386.
The record in this case fully establishes the fact that Green must have been acquainted with the state of the title, and the contingencies of procuring the proper conveyance from the represent tatives of Caldwell and Dickson. The proper means have been resorted to by Finucane to obtain the title from the hens of Caldwell, in whom it now resides in consequence of the transfer to Caldwell by Dickson of his interest in the lot. Caldwell’s representatives have never asserted any adverse claim to the lot; but on the contrary are willing to make a title so soon as they may become authorized, by the decree of the probate court. The delay in procuring the title has arisen, then, from the forms of the law, which upon the death of Caldwell rendered it necessary to obtain a decree of the probate court. Under these circumstances the proper inquiry is, not whether Finucane was able, at the time of the contract, to convey the title, but whether he is able to do *547 so, or will be able in a reasonable time. If he is, or will be, the purchaser, Green, ought not to insist upon being discharged from his contract, or to resist the payment of the money on the mere ground of a defect of title. This is laid down as the true rule by the court of Appeals in Kentucky in the case of Colton v. Ward, 3 Munroe, 313. 1 Maddock’s Ch. 349.
We do not deem it necessary to notice the points raised in regard to the equities between Green and M’Donald, for the latter is protected by the failure of Green’s equity as against Finucane and Barnes under whom M’Donald claims title. The decree of the chancellor dissolving the injunction as to M’Donald, must be affirmed. The decree as to Finucane and Barnes, is not before us, and therefore we cannot notice it. They might have appealed from the decree, but did not see proper to do it, and it is not therefore open to the observation of this court.