Mr. Justice Clayton
delivered the opinion of the court.
This is a bill filed to rescind a contract for the sale of a tract of land, and to enjoin a suit at law upon the notes *608 given for the purchase-money. It charges that in November, 1837, the complainant purchased of the defendant a tract of two hundred and fifty acres of land for the sum of ¡$7,500, and gave a mortgage upon another tract of seven hundred and fifty acres to secure the payment of the purchase-money. It charges that Sims, the vendor, represented that he had a full and complete legal title to the land, and that complainant confided in his representation. That complainant gave his three promissory notes for ¡$2,500 each, the first payable 1st January, 1839, and the others in one and two years afterwards. That Sims gave his. bond for title in which he agreed to make, upon request, sufficient conveyances and assurances of said land, freed and discharged from all incumbrances whatsoever, and to deliver possession upon request after the 1st of January, 1839, until which time he was at liberty to retain possession. That Sims has always remained in possession of the land, and still holds it, and has never made title thereto, although requested. States that Sims is insolvent, that at the time of the sale he had title to only one-sixth of the land, and fraudulently suppressed and concealed the want of title. That complainant is a man of weak mind; that he relied on Sims, who was his neighbor, and believed he would not take advantage of him. The bill was filed in May, 1842, and avers that the defects in the title had then been recently discovered.
The answer of Sims denies all fraud ; denies the making of any untrue representation.; denies that complainant is a man of weak mind, and denies the taking of any advantage of him. Avers that since the 1st of January, 1839, he has at all times been ready to execute a deed with proper covenants. States that he had purchased the shares of his co-heirs before he made the sale to complainant, and had taken their draft for title, which had been lost or destroyed, but that he had not taken conveyances from them until recently, and exhibits their deeds with his answer. This answer was filed in May, 1843, and one of the deeds of his co-hejrs bears date in August, 1842, the other in March, 1843.
The evidence proves the insolvency of Sims, and that he has *609 remained in possession of the land ever since the sale, cultivating it as his own. It also proves that the complainant is a very ignorant man, of very inferior capacity, and very easily imposed upon.
The chancellor dismissed the bill.
If this were a bill on the part of the vendor to enforce a specific performance of the contract, it would be dismissed without hesitation. The delay, the change of times and circumstances, the depreciation in the value of the land, and the inability of the vendor to make a valid title at the time agreed, and for a long period afterwards, would have clearly required the court to refuse its aid. It is not at this day to be taken as true, that time is regarded as of no moment in equity. On this point Mr. Baron Alderson, in a late case, thus stated the principle: “ A court of equity is to examine the contract, not merely as a court of law does, to ascertain what the parties have in terms expressed to be the contract, but what is in truth the real intention of the parties, and to carry that into effect. But in so doing, we must look carefully at what the parties have expressed; because, in general, they must be taken to express what they intend.” — “I do not see, therefore, why, if the parties choose to stipulate for a particular thing to be done, at a particular time, such a stipulation is not to be carried literally into effect in a court of equity. That is the real contract; the parties had a right to make it. Why then should a court of equity make a new contract, which the parties have not made?” Hipwell v. Knight, 1 Younge & Coll. 415, cited 2 Story’s Eq. 86, n.; Smith’s Heirs v. Christmas, 7 Yerg. 577; Benedict v. Lynch, 1 Johns. Ch. 379. To give a party a right to a specific performance, he must not have been guilty of negligence, and there must have been no change of circumstances during the delay materially affecting the character or justice of the contract. 1 Mad. Ch. 330; 2 Story’s Eq. 87; 7 Paige, 548. It is very clear, therefore, that equity would not decree a specific performance in favor of the vendor in this case.
The right to a rescission of the contract does not rest upon the same ground. There are many cases in which a bill and *610 cross bill, the one for a specific performance, the other for a rescission, have both been dismissed, and the parties left to their remedies at law. In general, fraud or plain and palpable mistake, must appear to justify the rescission of a contract. 2 Rob. Prac. 191. It remains to see whether the present case falls under either of these heads.
The answer does not state that the defendant disclosed the true state of the title to the complainant; it denies the making of any false representation, or the taking of any advantage. The suppression of a material fact, in regard to a thing about which one party places confidence in the other, amounts to a fraud. The very case put in the books to illustrate the principle, is where a vendor sells an estate to which he has no title, and conSeals that fact. The very purchase implies a trust, and confidence on the part of the vendee, that no such defect exists. 1 Story’s Eq. 218. There is an implied warranty in every sale, made without explanation, that the vendor is able to do what he contracts to do. Garnett v. Macon, 6 Call, 308; S. C. 2 Brock. R. 185; Boyce v. Grundy, 3 Pet. 217.
The circumstances of the case negative the idea that the defendant disclosed to the complainant the state of the title. He took a mortgage for the purchase-money upon the residence of the complainant, and did not include the estate which he sold, and the mortgage might become absolute on failure to make the first payment, on the very day he stipulated to give possession of the land he sold. The answer is falsified by the proof in one particular, the mental capacity of the complainant. It is also falsified in another, unless the defendant considered the making of a deed, whether he had title or not, was a performance of his contract. The very fact that “ he was ready and willing ” to make such deed as a compliance with his contract, at a time when he was insolvent, and his covenants worthless, is a circumstance to prove that he wished to keep up the delusion he had created in regard to his title, by concealing its defects. No one could be presumed willing to pay a high price for land, when he knew that five-sixths of the title was outstanding, and trust to the covenants of an insolvent vendor. The proof *611 too, is, that Sims has not paid for one-sixth part of the land, which he purchased after this bill was filed, at the sale of the administrator of Hannah O. Quin, his sister. A statutory mortgage, of course, subsists upon it for the purchase-money; hence he is not yet able to comply with his covenants to convey free from incumbrances. This is a defect which might be cured, yet it explains the frame of mind in which the answer was written, when it states that from the 1st of January, 1839, he has always been ready and willing to make a deed. ' All this goes to show, that entire reliance cannot be placed upon the answer.
The complainant had no title to five-sixths of the land, until after this bill was filed, for the assertion in the answer, that he had bought the land before he sold, but had neglected to take a conveyance, is not responsive to the bill, and is unsupported by testimony. The complainant, according to the evidence, was of inferior capacity, and easy to be imposed on. It is almost certain that no man of ordinary prudence, if he had been informed that the vendor had no title to five-sixths of the land, would have made this contract. This is another circumstance to establish the concealment.
Weakness of mind, short of legal incapacity, unconnected with fraud of the opposite party, will not be cause to set aside a contract. 1 Mad. Ch. 223. Yet when combined with other circumstances, it is an important consideration, and has a material influence upon the validity of a contract. Samuel v. Marshall, 3 Leigh.
In this case the vendor has always remained in possession of the land he sold, and has cultivated it as if it still belonged to him. The land has greatly depreciated in value.
From a view of the whole case, we are strongly impressed with the belief, that the complainant, through the concealment of the defendant, concluded the contract in ignorance of the true state of the title.
It is doubtful whether the court would do full justice to dismiss this bill, and leave the parties to settle their rights at law. At the time the vendor commenced the suit at law, upon the *612 notes, which is enjoined in this bill, he had no title to five-sixths of the land. The filing of this bill was a request of title — steps were not taken to procure one of the titles for several months after the bill was filed, and they were not in fact obtained until some months later. The vendor, Sims, then was not prepared to comply with his covenant to make title, either when the suit was brought, or when the request was made. Courts hold, covenants to be dependent, unless a contrary intention clearly appears. The time fixed for performancejs, at law, deemed of the essence of the contract; and if the vendor is not ready and able to perform his part of the agreement on that day, the purchaser may elect to consider the contract at an end. Bank of Columbia v. Maguer, 1 Peters, 455; Stockton v. George, 7 How. 172. In this case the vendor could not recover at law, if before judgment upon the notes a title were demanded, and he were unable to make it. He must perform his part of the contract before he would be permitted to recover. But there is a mortgage given by the complainant, which the vendor might attempt to enforce in equity, independent of the suit at law. It is better, therefore, to decide the whole controversy in this suit, and thus put an end to litigation.
We think the complainant has made out a ease for rescission. He will be entitled to a lien on that part of the land to which the vendor has title, for the amount of money which he has paid under the contract. The case will be reversed and remanded, that an account may be taken of the payments so made, with interest. The contract will be rescinded, the agreement and mortgage cancelled, and the suit at law perpetually enjoined.
The decree is reversed and the cause remanded.