Milligan, J.,
concurring:
I assent to the judgment in this case, but upon entirely different grounds than those upon which it is placed in the opinion just read. The written contract was made and entered into by the claimant and Captain Mullen, the predecessor of Captain Turnley, on the 28th July, 1864, which, by its own terms, expired four or five months before the corn involved in this controversy was delivered. The order on which it was delivered was given by Captain Turnley, but with no reference whatever to Mullen’s contract. On the contrary, he expressly disclaimed its existence, and stated that it had long since expired. After this disclaimer, as I understand the record, there was no valid recognition of its vitality by either party, and the claimant’s counsel now puts the case éxpressly on the subsequent parol agreement, and rejects the former written contract.
At law the time for the performance of a contract is deemed of the essence of the contract, although a court of equity, in proper cases, will carry the agreement into execution after the time appointed for its fulfillment has expired; but this is not done without the concurrence of both parties at law. (2 Sch. & L., 347-684; Bank of Columbia v. Hagner, 1 Pet., 455, 465; also, Chitty on Contracts, p. 799, and Story on Contracts, § 971.)
There is, I admit, a class of cases of which Ciarle’s Case, decided by the Supreme Court, (ante p. 24) is an example, in which *489 tbe contract itself declares no penalty for its non-performance within tbe time stipulated, or authorizes the defendants to forfeit or terminate it; that nothing but damages can be claimed' by the Government, which tbe claimant’s bond for performance is executed to secure. But this case is widely different from the case in hand. It contemplates the regular continued efforts of tbe plaintiff to perform Ms contract after tbe lapse of tbe time appointed for its fulfillment, with the implied assent and acceptance of such performance on the part of tbe Government, which waives tbe claim for damages and continues tbe existence of the agreement$ while, in tbe case under consideration, tbe work of performance bad ceased for months, and tbe contract became absolutely extinct — utterly dead — and it cannot, as I think, be again, at the mere pleasure of the parties, resumed and vitalized.
Quartermasters are but special agents of the Government, with all their powers limited by law, which is presumed to be as well known to the party dealing with them as to the agents themselves. Both* are charged with notice of tbe law, and bound by its provisions. The power to revive, by parol, an extinguished contract, implies tbe i>ower to make a new one in tbe same way. The admission of authority in the one case carries tbe right in tbe other, and defeats tbe terse and salutary provisions of tbe Acts March 2, 1861, (12 Stat. L., 220,) June 23, 1862, (12 Stat. L., 411,) and July 4,1864.
In this view of tbe case, I hold, tbe contract on which tbe corn was delivered was a new and independent agreement, resting wholly in parol, and without any exigency, either in fact or by the declaration of the commanding officer, to support it. The case, so far as it rests on the parol agreement, falls within tbe principles of Henderson's Case, (4 O. Gis. B., 75,) and must be ruled by it.
But I yield to the judgment of tbe court, because it rests on the value of tbe corn actually received and used by the Government, and tbe law in all such cases implies a contract to pay for what it has used.