## ZINTSMASTER v. WERNER.

### No. 4247.

Circuit Court of Appeals, Third Circuit.
June 9, 1930.

William C. McClure, of Pittsburgh, Pa., Benjamin R. Williams, of Butler, Pa., and John A. Metz, of Pittsburgh, Pa., for appellant.

Gifford K. Wright, of Pittsburgh, Pa. (Alter, Wright & Barron, of Pittsburgh, Pa., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

WOOLLEY, Circuit Judge.

By a contract between Zintsmaster and Werner the former agreed to sell and the latter to buy certain lands in Florida for a consideration of $15,000, part to be paid at once and the balance by instalments in one and two years. After Werner had paid $5,400 and had refused to pay anything more, Zintsmaster tendered him a deed purporting to convey the title, and, then suing him, had a verdict and judgment for the balance of the purchase money. Werner appealed. We shall speak of the parties as they stood in the trial court.

The contract contains this provision:

"That if the said party of the second part (Werner) shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the first part (Zintsmaster) hereby covenants and agrees to convey and assure to the said party of the second part, * * * in fee simple, * * * by a good and sufficient deed, with abstract," the parcel of land described.

Declaring on this covenant, the plaintiff, in his statement of claim, said that he tendered "to the defendant a deed for the said property, said deed being in accordance with the article of agreement hereto attached, and demanded of him the payment of the balance of the purchase price, * * * which payment was refused. The plaintiff holds the said deed ready for delivery upon payment of the proper amount."

At the trial it appeared that the deed which the plaintiff had tendered the defendant and which he averred was "in accordance with the article of agreement," that is, to convey a fee simple title, did not convey such a title, nor in fact did it convey any title at

all because the plaintiff was himself without title. This constituted the defendant's justification for refusing to pay the balance of the purchase money and the ground for his claimed right to rescind the contract.

Before coming to the assigned error of the trial court in directing a verdict for the plaintiff, we shall state the evidence as to the plaintiff's title which is not in dispute.

When the plaintiff contracted to sell the land to the defendant, he neither had, nor claimed to have, title. He had, however, a contract with Susan J. Vickers, the title holder, for its purchase, bearing date December 15, 1925, payment to be made by instalments at short periods. Even this contract was of doubtful validity as in it the vendor, a married woman, was not joined by her husband. The Florida boom was on and this was a boom contract entered into with the hope that the land would be passed along from buyer to buyer at prices higher and higher. It was passed, superficially, from the plaintiff to the defendant by the contract in suit. Then the boom broke.

█ At or about the time the plaintiff demanded the balance of the purchase price, he obtained a deed for the property from Mrs. Vickers. As her husband did not join, the deed was void and the title remained in her. Carn v. Haisley, 22 Fla. 317. Then the plaintiff—still with the title in Mrs. Vickers—tendered to the defendant a deed of his own based upon Mrs. Vickers' void deed, which, naturally, the defendant refused to accept. At the trial the plaintiff offered in evidence an abstract of the title, the unrecorded void deed of Mrs. Vickers to himself, and his own ineffective deed to the plaintiff as proof of his ability to perform his covenant to convey a fee simple title to the defendant. The court, with the title still in Mrs. Vickers, directed a verdict for the plaintiff "conditioned," however, "that the abstract which the plaintiff has tendered here during this trial be brought down to date to show the recording of the deed from Susan J. Vickers to A. P. Zintsmaster (the plaintiff), being the deed which was offered in evidence in this case as plaintiff's Exhibit No. 1 (the deed mentioned above), and this abstract when brought down to date, together with the plaintiff's deed tendered to the defendant in this case, will be filed in the Clerk's office, to be taken out by the defendant upon payment of any judgment that may be entered upon the verdict here recorded."

This was not an inadvertent direction on the part of the learned trial judge for he was, of course, aware of the legal effect of the non-joinder of Mrs. Vickers' husband in her deed to the plaintiff and the legal effect of that non-joinder on the plaintiff's deed to the defendant. He directed the verdict on authority of Loud v. Pomona L. & W. Co., 153 U. S. 564, 14 S. Ct. 928, 38 L. Ed. 822, a case that very properly arrested his attention, and on his construction of the contract in suit in the light of the law of that case, to which we shall advert presently.

█ On May 13, 1929, the day the case was tried, Mrs. Vickers—this time her husband joining—executed a new deed for the property to the plaintiff which, together with the deed from the plaintiff to the defendant, were, after verdict, lodged with the clerk for delivery to the defendant on his satisfying the judgment. This second Vickers deed was executed at a point distant from Pittsburgh, the place of trial. Whether it was delivered before or after verdict on May 14, does not appear. Yet certain it is that it was not put in evidence before verdict and that its validity has never been passed upon. Nor was its existence known to the court, jurors, or the defendant when the verdict was directed and rendered. Thus it is clear that the verdict was rendered without evidence that the plaintiff had offered to perform, or could perform, his undertaking to convey a fee simple title to the defendant, whom he was suing for the balance of the purchase money. The judgment which in terms followed the verdict has been referred to as a "conditional" judgment, that is, a judgment whose enforcibility, if not its validity, is conditioned on the plaintiff's perfecting, or, rather, acquiring, title to the property.

█ The action of the learned trial judge in directing such a verdict and entering such a judgment is not so unusual as at first it would seem for he was following the case of Loud v. Pomona Land & Water Co., as he interpreted it. That decision on the facts of that case is law. If the law of that case is applicable to the facts of this case, his action was right. If, however, that case is distinguishable on the facts from the case at bar then, conceivably, he fell into error. We think the cases differ on the facts and therefore differ in the application of the law.

The Pomona Land & Water Company and Loud entered into a contract, whereby the Water Company agreed to sell and Loud agreed to buy certain lands and certain shares of the stock of an irrigation company entitling the holder to a certain water flow measured in inches, payment to be made part on

the execution of the contract and the balance by instalments. Loud defaulted and the Water Company sued for the balance of the purchase money. At the trial the defendant, as did the defendant in the case at bar, defended on the ground that the plaintiff did not have a good title to the lands, but, differing from the case at bar where the plaintiff himself proved he had no title and could not perform his covenant, the court in the Loud Case found, for want of evidence to the contrary, that the Water Company (the plaintiff) had—prima facie, at least—a good title and could perform. This factual defense having fallen out of the case, the court then turned to the contract to see when and under what conditions the plaintiff water company should perform. The contract provided in terms that, "after making the payments and full performance of the covenants * * * by the party of the second part (Loud), the party of the first part (the Water Company) will, * * * convey" the land and transfer the shares of stock as agreed upon.

Very similar to this opening sentence in the Loud contract is the opening sentence of the contract in suit, namely, "That if the said party of the second part (the defendant) shall *first* make the payments and perform the covenants" to be made and performed by him, the party of the second part (the plaintiff) will "convey and assure (to him) in fee simple" the land in question. But the Loud contract had more in it than the opening statement. By a later provision, setting at rest all questions as to the order in which the parties should perform their respective covenants, it provided that:

"This instrument is not and shall not be construed as a conveyance, equitable or otherwise, and that until the delivery of said final deed of conveyance or tender of all payments *precedent* thereto, the party of the second part (Loud) shall have no title, equitable or otherwise, to said premises."

On these expressions of the contract in the Loud Case, the Supreme Court held, very definitely, that the covenants of the parties were not dependent and concurrent, requiring one to pay and the other to convey in one transaction but were by their plain terms independent, requiring the vendee to pay as a condition precedent to requiring the vendor to convey. Though contrary to the ordinary rule of simultaneous payment and conveyance in such transactions, Magaw v. Lothrop, 4 Watts & S. (Pa.) 316; Bank of Columbia v. Hagner, 1 Pet. 455, 464, 465, 7 L. Ed. 219; Johnson v. Wygant, 11 Wend. (N. Y.) 48;

Sanford v. Cloud, 17 Fla. 532, 551; Sugden on Vendors, 207, the court held that the parties, if they chose, could, and did, contract with reference to the transaction in a way which put the vendee wholly in the hands of the vendor with the risk of never receiving the land for which he had paid. Yet in that case the vendor had title to the land and, doubtless, could be compelled to perform specifically. We do not know what the decision would have been if the plaintiff, instead of proving that it had title and thus proving its ability to perform its covenant to convey, had proved, as the plaintiff did in this case, that it had no title and was not able to perform its covenant to convey. At all events, on the case as made, the trial court in the Loud Case directed an absolute and unconditional verdict for the plaintiff. On motion for a new trial, it ordered that:

"Judgment be entered on the verdict, but that execution should be stayed until thirty days after the plaintiff deposited with the Clerk of the court for the benefit of the vendee all the deeds to the land and certificates of stock, so that defendant may have an opportunity of examining the same to see if the titles are perfect, and the transfers of stock are made in accordance with the laws of the State of California."

It should be noted that this was not a conditional judgment; it was in effect a conditional execution. The judgment was based on the failure of the defense of bad title in the vendor and on the court's construction of the contract. Differing from the case at bar, nothing was left open for proofs. The judgment was absolute with a stay of execution.

Following the Loud Case the learned trial judge in the case at bar construed the covenants of the contract in suit as independent and, finding payment a condition precedent to conveyance, held that the plaintiff could, on the defendant's refusal to pay, recover the balance of the purchase money without tender of a deed conveying a fee simple title and without evidence of title in himself showing his ability to perform his covenant to convey. This construction he based on the one expression of the contract already quoted—"That if the said party of the second part (the defendant vendee), shall *first* make the payments," the party of the first part will convey. Whether this alone will sustain the construction is doubtful in view of Sanford v. Cloud, 17 Fla. 532. Yet the parties themselves did not construe the expression to mean that the defendant should pay the full purchase price and then later the plaintiff

should convey a fee simple title, leaving to the defendant the hazard of a suit to enforce such a conveyance. The plaintiff himself, acting upon his understanding of what he and the defendant had agreed to do, tendered a deed to the defendant before suit, insisting that it conveyed a good title, and when he sued he rested his case, by his pleadings, on that tender which he said was "in accordance with the article of agreement," and, by his pleadings, renewed or continued the tender, and when he came to trial he proved the tender a condition precedent to his right to recover. Accepting the plaintiff's own construction of the contract, which in this particular coincides with that of the defendant, and which together reveal the intention of the parties, we are constrained to hold that the decision in the Loud Case does not rule this case and that, on the record as it stood, the learned trial court fell into error in directing the verdict and entering the judgment for the plaintiff. Rochester & P. C. & I. Co. v. Makoma Coal Co., 271 Pa. 394, 398, 114 A. 261.

There now remains a question as to the form of our decree and the terms of the mandate. That depends upon two other questions in which we think there is no substance. One relates to the defendant's charge of fraud, of which on this record we find no evidence. Therefore it was not error on that ground for the court to refuse to submit the case. The other arises from the contention that, as the plaintiff had no title to the land when he contracted to sell it, the defendant may repudiate the contract because invalid at the beginning, or, if valid at the beginning, he may now rescind it because the title the plaintiff later acquired and tendered him was bad. Tender of a defective title may justify a vendee in refusing to accept it, 39 Cyc. 2048, but that does not release him from his obligation to accept a good title tendered later, Black v. American International Corp., 264 Pa. 260, 107 A. 737; Hepburn v. Auld, 5 Cranch, 262, 3 L. Ed. 96; Hepburn v. Donlop, 1 Wheat. 179, 4 L. Ed. 65; Galloway v. Finley, 12 Pet. (37 U. S.) 264, 9 L. Ed. 1079, when time is not of the essence of the contract. Bank of Columbia v. Hagner, 1 Pet. 455, 465, 7 L. Ed. 219. If the situation were reversed and the vendee were pressing the vendor for performance on a fixed day and if the vendor were not able to convey the title he had covenanted to convey, the vendee, having performed the agreement on his part by making a tender of payment, could elect to sue or consider the contract at an end. Bank of Columbia v. Hagner, 1 Pet. 455, 465, 7 L. Ed. 219. But in this case the vendee, not seeking the conveyance and having breached his covenant to pay, has nothing to elect. His covenant to take and pay remains and on a proper showing is enforcible. Therefore the judgment of the District Court is reversed and the case remanded for a new trial in accordance with this opinion.