**BURNS MORTG. CO., Inc., v. BOND REALTY CORPORATION et al.**

No. 6031.

Circuit Court of Appeals, Fifth Circuit.
March 6, 1931.
Rehearing Denied April 24, 1931.

Carl T. Hoffman, of Miami, Fla., and Geo. Earl Hoffman, of Pensacola, Fla. (Carl T. Hoffman, of Miami, Fla., and C. E. Farrington, of Fort Lauderdale, Fla., on the brief), for appellant.

W. H. Burwell and D. H. Redfearn, both of Miami, Fla., for appellees.

Before FOSTER, Circuit Judge, and HUTCHESON and SIBLEY, District Judges.

SIBLEY, District Judge.

Prior to the election of a trustee in bankruptcy, Burns Mortgage Company, appellant, sought as transferee to prove as claims against the estate in bankruptcy of Maud E. Brickell two series of notes given for the purchase of land, each series for approximately $170,000. The objection of Bond Realty Company and other creditors, appellees, to the effect that no right of recovery on the notes existed at the date of the filing of the petition in bankruptcy, was sustained. Burns Mortgage Company appeals.

Another objection which fills the greater portion of the record is that the transfer to Burns Mortgage Company of the notes and title to the land involved was made subsequently to the bankruptcy, and for the use and benefit of brothers and sisters-in-law of the bankrupt in a collusive effort to prove these claims and through them to control the administration and exhaust the estate. We think, as did the court below, that this issue

is immaterial. No question of innocent holder for value of the notes is involved, and the claims are neither better nor worse in the hands of the Burns Mortgage Company than they would have been otherwise. The alleged trade since the bankruptcy by which releases of mortgages against the land were obtained, with the purpose of making the notes good, is, as against other creditors, rather strategy than fraud. We turn to the question whether the strategy can succeed.

The facts appear largely on the face of the exhibits filed with the proofs of claim. They are practically identical as to each series of notes, and for simplicity one series only will be considered. On May 18, 1925, Maud E. Brickell bought of Brickell Estates Company certain Florida land, paying cash $45,000 and giving four notes for $33,750 each, due in one, two, three, and four years from date. The contract was reduced to writing July 3, 1925. It recites the foregoing and provides: "If the party of the second part shall first make the payments and perform the covenants as hereinafter set out, the party of the first part agrees to convey to the party of the second part by a good and sufficient warranty deed, *free and clear of all encumbrances*, other than such as may have been placed thereon by or through the party of the second part," the described land. The covenants and conditions following indicate that the land was to be cut up into building lots, and restrictions were imposed as to the kind and value of buildings to be erected, etc. The party of the first part further agreed that it would make streets and concrete sidewalks according to plat and install electricity and water conveniences, all to commence within 90 days from date. It was agreed that should there be default in any payment the whole amount should immediately become due and payable, or at the option of the party of the first part the contract should become null and void and party of the first part immediately reenter and resell, all previous payments being forfeited as liquidated damages. Time was agreed to be of the essence of the contract. On May 16, 1925, the land, together with other land, had been incumbered by a recorded mortgage in an amount of $1,000,000 to George M. Brickell and Lizzie Brickell, the brother of the bankrupt and his wife. The first note, due in May, 1926, was not paid, and by consequence all became due. None was ever paid. Neither was the mortgage paid off. It appears that Maud E. Brickell sold off many lots and took many notes for them, probably also collecting some cash. It

does not appear whether the streets, sidewalks, electricity, and water were furnished as agreed. Neither party to the contract is shown to have done anything further, either to terminate or to carry it out, when, on November 28, 1928, a petition in involuntary bankruptcy was filed, followed by adjudication June 6, 1929. The notes and sale contract were assigned by Brickell Estates Company to Burns Mortgage Company, and conveyance made of the land subject to the mortgage, under date of November 12, 1928. But an affidavit by the treasurer of the Brickell Estates Company, which was filed with the proof of claim, states that the assignment was made after the filing of the petition. The true date is, however, immaterial, because it was not until December 11, 1929, long after the filing of the petition, that a release of the land from the mortgage was obtained. On February 7, 1930, Burns Mortgage Company, having thus obtained an apparently clear title, executed for delivery a warranty deed for the land to Maud E. Brickell, and attached it, with all the papers held by it, to the proof of claim filed on March 6, 1930. Do these facts show a provable claim?

In this connection the time of filing the petition is the critical time. 11 USCA § 103; Zavelo v. Reeves, 227 U. S. 625, 33 S. Ct. 365, 57 L. Ed. 676. The notes on their face were "a fixed liability, as evidenced by * * * an instrument in writing, absolutely owing at the time of the filing of the petition," provable under 11 USCA § 103(a) (1). But the accompanying papers show that the main consideration of them was the future conveyance of a title to certain land, free and clear of all incumbrances, which had not been made at the date of the filing of the petition. According to Ames v. Moir, 138 U. S. 306, 11 S. Ct. 311, 313, 34 L. Ed. 951, a debt does not really arise until the consideration is furnished; the court saying: "The writing [an agreement of purchase] did not, in itself, create a debt within the meaning of the bankruptcy act. It could not become effective as an instrument creating a debt in favor of plaintiffs until, pursuant to a call by defendant prior to July 20th, they delivered, or offered to deliver, to him the high wines he agreed to take, at the price stipulated. * * * Then, and not before, was a debt created within the meaning of the bankruptcy act." By the same token, under no executory contract would a provable claim arise as a debt "founded upon an open account or upon a contract express or implied," under 11 USCA § 103(a) (4), the only other head under which such a claim

might fall. But this would result in the monetary obligations of the bankrupt under executory contracts remaining unaffected by his discharge (11 USCA § 35), thereby greatly limiting the attainment of the great objects of the Bankruptcy Act. From the creditor's standpoint, the bankruptcy would have stripped the debtor of his property without possibility of the creditor's participation. From the debtor's standpoint he would still be under the crushing burden of unwise or unfortunate engagements with no means to meet them, and so in no sense financially a new man. Ames v. Moir did not involve a contract executory at the date of bankruptcy, for the wines had then been delivered, and the real question was whether the debt was one created by a fraud. The later decisions of the Supreme Court have steadily tended to draw executory contracts within the operation of the bankruptcy. In Williams v. United States Fidelity & Guaranty Co., 236 U. S. 549, 35 S. Ct. 289, 290, 59 L. Ed. 713, a contract of indemnity was involved, and claimed not to have been matured at the date of bankruptcy. The court said: "It is the purpose of the bankrupt act to convert the assets of the bankrupt into cash for distribution among creditors, and then to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." The obligation was held provable and discharged. In Lesser v. Gray, 236 U. S. 70, 35 S. Ct. 227, 59 L. Ed. 471, goods were sold but undelivered at the time of the filing of the petition in bankruptcy. Claim for the consequent loss was sought to be proved but was disallowed (erroneously, according to Central Trust Co. of Illinois v. Chicago Auditorium Ass'n, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, below). After the bankruptcy case was closed, suit was brought as on a claim unprovable and hence undischarged. Recovery was denied in Lesser v. Gray, 8 Ga. App. 605, 70 S. E. 104, on the ground that the bankruptcy being involuntary, and not an act of the bankrupt, the contract was discharged by act of the law, without liability. On appeal the Supreme Court did not adopt nor repudiate this reasoning, but held that if it were not correct, then there was in fact a provable debt and it was barred by the discharge in bankruptcy. In Central Trust Co. of Illinois v. Chicago Auditorium Ass'n, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, the court, after setting to one side executory leases and contracts for personal service as being

perhaps sui generis, held broadly that bankruptcy, whether voluntary or involuntary, was due to the bankrupt's act, and, by disabling him to perform, constituted an anticipatory breach of an executory contract and gave rise to a provable debt for the damages suffered. But ordinarily an anticipatory breach gives the party not in fault an option to accept the breach and claim damages, or to refuse it and tender performance at the maturity of the contract. This option, if allowed, would defeat the objects of the Bankruptcy Act. It would seem that in cases where specific performance could not be had, that the decision in Lesser v. Gray implies that all remedy on the contract ceases with the bankruptcy except that for the anticipatory breach. A seller must keep undelivered goods and prove only for his damages. In a sale of land a party not in default may similarly treat a bankruptcy as an anticipatory breach and prove for damages. In re Beverlyridge Co. (C. C. A.) 35 F.(2d) 818.

But courts of bankruptcy, for the purposes of bankruptcy, including the allowance of claims, have jurisdiction in equity as well as at law, 11 USCA § 11, and may allow debts cognizable only in equity. James v. Gray (C. C. A.) 131 F. 401, 1 L. R. A. (N. S.) 321; In re Putnam (D. C.) 193 F. 464. Equity may require specific performance of contracts respecting land. Therefore, because of his right to specific performance, we think that a vendor of land, who is in no fatal default at the time of bankruptcy, may also insist on his right to convey title within a reasonable time and prove the debt for his purchase money, if he so elects. Correlatively, of course, the trustee, when to the advantage of the estate, may tender the purchase price and insist on a conveyance. But Burns Mortgage Company and Brickell Estates Company were not in position to ask specific performance at the date of bankruptcy, or within a reasonable time afterwards. While in case of installment payments, payment and conveyance are not usually concurrent acts and dependent covenants (Loud v. Pomona Co., 153 U. S. 564, 14 S. Ct. 928, 38 L. Ed. 822), yet payment of the last installment is presumably dependent on conveyance then to be made. Bank of Columbia v. Hagner, 1 Pet. 455, 7 L. Ed. 219. And in no case is payment demandable when it is not in the power of the vendor to make the good title which he has agreed to make. Bank of Columbia v. Hagner, supra. By the American rule the vendor is not required to have good title till the time for performance of the contract arrives, but he

988

must have it then or the vendee may call the trade off. 39 Cyc. 1406, 1410; Bank of Columbia v. Hagner, supra. This contract fully matured on the default in payment of the first note in May, 1926, for all of them then became due. Then, and at all times up to a date a year after the bankruptcy petition was filed, the vendor here was not ready and able to perform, for the purchase money due him was not sufficient to discharge the $1,000,000 mortgage, and there is no showing that any release of it could have been gotten otherwise. In order to have specific performance, Burns Mortgage Company must have been able to tender performance. Kelsey v. Crowther, 162 U. S. 404, 16 S. Ct. 808, 40 L. Ed. 1017; Jaeger v. O'Donoghue, 55 App. D. C. 383, 6 F.(2d) 686. The release of the mortgage was not gotten until more than three and a half years after the payments were due by acceleration, and during all that time it is common knowledge that the depreciation in Florida lands was enormous. The proof of claim offers to surrender all lien against the land, indicating that it had become comparatively valueless. Unexplained, these circumstances show laches. A court of equity could not look with favor upon such a case. There was no error in refusing proof of the purchase-money notes as a matter of right.

But the contract did not wholly lapse by the vendor's default at its maturity. There had been a part execution of it. Possession apparently had been had, part of the purchase money had been paid, and some of the land sold to others. There are equities to be settled. A rescission involves difficulties on which both the estate of the bankrupt and the purchasers from the bankrupt ought to be heard. It may be, after all, if clear title can now be had, that it would be better to waive the vendor's default and accept for the estate the performance now offered, with compensation for the failure, if any, to make the promised improvements. These were matters that could not be handled in this contest between creditors, occurring before the election of a trustee, for the appellees were not the representatives of the estate nor of the bankrupt's vendees. These should not be concluded by it. We therefore affirm the judgment refusing the proofs of claim on the record before us, but subject to a re-examination of them on fuller evidence if asked for (see 11 USCA § 11(2); Sandusky v. Bank, 23 Wall. 289, 23 L. Ed. 155; In re Ives [C. C. A.] 113 F. 911; In re Hamilton Automobile Co. [C. C. A.] 209 F. 596), and without prejudice to a trial of the equities of the case, upon proper

equitable proceedings, to which the trustee and the purchasers of the property from the bankrupt may be parties.

Modified and affirmed.