## TELFENER v. RUSS.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 462. Argued March 2, 3, 1896. — Decided March 30, 1896.

Under the provisions of the act of the State of Texas of July 14, 1879, amended March 11, 1881, and repealed January 22, 1883, in respect of the purchase of unappropriated lands, the applicant was obliged, in order to obtain the right to purchase, to cause the land desired to be surveyed, and the survey, field-notes and maps to be returned within a time prescribed; and no tract could be purchased containing more than six hundred and forty acres. R. and T. entered into an agreement consisting of two papers but constituting and declared on in this case as one contract, whereby R. agreed to transfer to T. his rights to purchase acquired under applications for the survey of 1,160,320 acres; to make all the surveys, field-notes and maps thereof, and file them in the office of the surveyor and in the General Land Office of the State within the time prescribed by law; and T. agreed to pay twenty-five cents per acre for such rights, and five cents per acre for the surveys, field-notes and maps and the filing thereof. T. failed to make any of the payments, and R. failed to file the surveys, field-notes and maps in the General Land Office within the stipulated time excepting those covering 15,360 acres. *Held,*

(1) That the covenants of the contract were mutual and dependent and subject to the rule that the party who insists upon performance from the other side must show a performance on his own part, while he who wishes to rescind a contract need only show non-performance or inability to perform by the other party;

(2) That as between applicants and the State, while it seems from the course of decision in Texas that an applicant could obtain more than a single tract at one time, yet the policy of the act was that each tract should be considered as independent of other tracts the purchase of which also might be sought, and as R. failed as to the larger number of tracts to file the surveys, field-notes and maps within the time prescribed, he lost the absolute right to demand patents from the State, on payment, for such tracts, and was therefore unable to perform his contract with T., for the whole number of acres, according to its terms;

(3) That if upon application the applicant obtained any right which under the act was susceptible of transfer, it was not vested until the surveys, etc., were filed;

(4) That the act contemplated that the surveys should be made upon the ground, and it not only did not appear in this case that such surveys had been made, but it would seem that they must have been made up from office documents and not from actual survey on the ground.

THIS case was first argued March 5, 6, 1895. On April 8 reargument was ordered before a full bench. The facts, as now stated by the court, are as follows:

This case comes up on a writ of certiorari, issued to the United States Circuit Court of Appeals for the Fifth Circuit. The action was brought for damages for an alleged breach of a contract, for the sale, by the defendant to the plaintiff, of certain unappropriated public lands of the State of Texas, the right to the title of which he claimed to have acquired from the State, and it arose upon the following facts: In July, 1879, the legislature of that State passed an act for the sale of a portion of its unappropriated public lands and the investment of its proceeds. It provided that any person, firm or corporation desiring to purchase any of such lands set apart and reserved for sale might do so by causing the tract of land which the parties desired to purchase to be surveyed by the authorized public surveyor of the county or district in which the land was situated. And it was made the duty of the surveyor, to

whom application was made by responsible parties, to survey the lands designated in such application within three months from the date thereof, and within sixty days after the survey, to certify to, record and map the field-notes of the survey, and to return to and file the same in the General Land Office, as required by law in other cases. The statute also provided in its fifth section that within sixty days after the return to and filing in the General Land Office of the surveyor's certificate, map and field-notes of the land desired, it should be the right of the parties who had the same surveyed to pay or cause to be paid into the treasury of the State the purchase money therefor at the rate of fifty cents per acre, and that upon the presentation to the commissioner of the general land office of the receipt of the state treasurer for the purchase money, the commissioner should issue to the applicant a patent for the tract or tracts of land thus surveyed and paid for.

The statute declared that no tract of land should be sold under the provisions of the act which contained more than six hundred and forty acres, and that no tract should have a greater frontage on any running stream or permanent water than one vara per acre for each survey of three hundred and twenty acres or less, and three fourths of one vara per acre for all other surveys.

The statute also enacted that after the survey of any of the public domain authorized, it should not be lawful for any person to file or locate upon the lands surveyed, and that such file or location should be void. It also declared that should any applicant for the purchase of public lands fail, refuse or neglect to pay for the same at the rate of fifty cents per acre within the time prescribed in section five of the act, that is, within sixty days after the return to and filing in the General Land Office of the surveyor's certificate, map and field-notes, he should forfeit all rights thereto, and should not thereafter be allowed to purchase the same, and that the land thus surveyed might be sold by the commissioner of the General Land Office to any other person, firm or corporation who would pay into the treasury the purchase money therefor.

The plaintiff below, the defendant in error in this case,

George W. Russ, a citizen of Texas, alleged that some time in October, 1882, he, being a responsible party, and intending to purchase a body of land which was subject to purchase and sale, applied, under the act of Texas, as amended, to the surveyor of the county of El Paso for the purchase from the State and for the survey of eighteen hundred and thirteen sections of land of six hundred and forty acres each, *being, in the aggregate, one million one hundred and sixty thousand three hundred and twenty acres,* situated in that county, and forming part of the Pacific Reservation; that the application was made in two instruments, describing different portions of the land, and that his applications were filed and recorded in the office of the surveyor; that on the first of November, 1882, he was about to proceed to have the lands surveyed into tracts of six hundred and forty acres each, when the defendant below, Telfener, offered to assume the payment thereof and to contract for the sale and assignment of his, Russ's, right to purchase the lands applied for from the State, and that thereupon a contract was executed between them, Russ and Telfener, bearing date on that day, in two separate instruments, constituting, however, only one distinct contract in its entirety, and as such contract, with dependent conditions, it was declared upon, by the terms of which Russ, claiming to have made application in due form for the purchase of about one million of acres of land in El Paso County, and reciting that Telfener was desirous of purchasing of him all his right, title and interest in the lands under the applications made for their purchase, provided they were regularly made under the act of July 14, 1879, agreed and promised to transfer and assign to Telfener all his (Russ's) right, title and interest in the lands applied for, the consideration being twenty-five cents per acre, which consideration Telfener promised to pay, and Russ also agreed to have the surveys made and filed with the maps and field-notes in the General Land Office, for which Telfener was to pay him five cents per acre. It was for an alleged breach of this contract that the action of *Russ* (the plaintiff below) v. *Telfener* was instituted.

*Mr. Andrew Wesley Kent* and *Mr. J. L. Peeler* for plaintiff in error.

*Mr. Clarence H. Miller,* (with whom were *Mr. S. R. Fisher, Mr. E. B. Hancock* and *Mr. Franz Fiset* on the brief,) and *Mr. Joseph Wheeler,* (with whom was *Mr. Josiah Patterson* on the brief,) for defendant in error.

Mr. Justice Field, after stating the provisions of the act of Texas as above, delivered the opinion of the court, as follows:

No right, title or interest in the lands which Russ desired and applied to purchase passed to him solely by his application for the survey. Until that was followed by the survey, map and field-notes of the survey, and they were filed in the General Land Office of the State, it gave no right to the applicant to purchase the land.

In *White* v. *Martin,* 66 Texas, 340, the court, referring to the act of July 14, 1879, asks the pertinent question, "How may an applicant for lands under that statute become a purchaser?" and replies as follows:

"The statute answers the question. He 'may do so by causing the tract or tracts which such person, firm or corporation desires to purchase to be surveyed.' When this is done *as the act contemplates,* then *and not before, the State contracts, upon the purchaser's complying with the other requirements of the act, that it will convey to him the land surveyed.* When this point was reached there existed an executory contract which gave the purchaser a vested right, upon complying with his part of the contract, to have the land purchased."

In *Campbell* v. *Wade,* 132 U. S. 34, which was in this court at the October term, 1889, it was stated that it was contended in the state courts, and the contention was renewed here, that the petitioner, (who desired to purchase a portion of the unappropriated lands of Texas,) by his application for a survey, had acquired a vested interest in the lands he desired to purchase, which could not be impaired by their subsequent withdrawal

from sale.   But the court replied that this position was clearly untenable; that the application was only one of different steps, all of which were necessary to be performed before the applicant could acquire any right against the State.   The application was to be followed by a survey, and the surveyor was allowed three months in which to make it.   By the express terms of the act, it was only after the return and filing in the General Land Office of the surveyor's certificate, map and field-notes of the survey, that the applicant acquired the right to purchase the land by paying the purchase money within sixty days thereafter.   " But for this declaration of the act," said the court, " we might doubt whether a right to purchase could be considered as conferred by the mere survey so as to bind the State.   Clearly," the court adds, " there was no such right in advance of the survey.   The State was under no obligation to continue the law in force because of the application of any one to purchase.   It entered into no such contract with the public. The application did not bind the applicant to proceed any further in the matter; nor, in the absence of other proceedings, could it bind the State to sell the lands."

There is another view of this case which merits consideration. The contract between Russ and Telfener was for Russ to sell to the latter his right to purchase from the State the entire tract of eighteen hundred and thirteen sections of its public lands for which he had applied, not for any particular portion of that tract.   Telfener had never proposed to take any less than the whole amount nor contracted to do so.   An offer of any less by Russ, had it been made, of which there is no evidence, would never have been a compliance with his contract with Telfener.

It does not appear that the entire tract of land was surveyed until after November 1, 1882.   At that time ninety-eight sections, embracing sixty-two thousand seven hundred and twenty acres of the tract, were unsurveyed, and it could not, in truth, be alleged that on the 1st day of that month the plaintiff was the sole owner of a valuable, valid and transferable interest in the whole body of land, embracing eighteen hundred and thirteen tracts, amounting to more than a million acres of

land, as averred by him in his declaration. On the contrary, he possessed no interest in the whole body of land of that amount, and if the contract for the purchase was possessed of any validity, it must have applied to the whole body in its entirety and not to any particular portion thereof. And of the land surveyed, payment at the rate of fifty cents per acre was only made on twenty-five of the surveys, at least there was no evidence of the payment on any other land surveyed. And the applicant Russ had acquired no vested right to purchase of the State the whole of the land because he had not complied with the law in that behalf.

The ninth section of that statute declared in express terms that should the applicant for the purchase of public lands fail, refuse or neglect to pay for the same, at the rate of fifty cents per acre, within the time prescribed in section five of the act, which was within sixty days after the return to and filing in the General Land Office of the surveyor's certificate, map and field-notes of the land desired, he should forfeit all right thereto, and should not thereafter be allowed to purchase the same, and the land thus surveyed might be sold by the commissioner to any other party who would pay into the treasury the money therefor. No official survey, as it appears, was made of the whole amount of the lands which the plaintiff below, Russ, desired to purchase, and no map or field-notes of the whole amount were ever made and returned to the General Land Office, and no payment for the lands was ever made or tendered to the treasurer of the State. The claim therefore of having acquired any right or title in and to the whole amount of the lands by the proceedings taken was manifestly groundless. The plaintiff below could not convey any proprietary interest in the whole amount of the lands desired until the required payment therefor was made, and any promise by the defendant below, Telfener, to pay to him twenty-five cents, or any amount, for an acre of such hoped for, and not acquired, land or for any less quantity was worthless, without any value or consideration. The plaintiff below, however, pushed his claim for the compensation of twenty-five cents an acre, which, not being recognized, he brought an action against Telfener

to recover the same and for the surveys and the return and filing of the same and the map and field-notes in the district court, for the county of Travis, in Texas. The defendant below, Telfener, appeared to the action, and on his motion it was removed to the Circuit Court of the United States for the Western District of Texas. He then answered the petition, denying its allegations, and averring that his pretended agent, one Baccarisse, through whom Russ alleged the contract was made, never had any authority to make a contract of the kind, and that Russ never acquired by his applications any right or interest in the land, the right to purchase which he claimed to have sold to the defendant, the survey, map and field-notes never having been returned to the General Land Office as required by the third section of the statute of Texas, and he never having made or tendered any payment for the same as also required by that section, and that any interest thus acquired was without any tangible or appreciable value.

The case was tried in the Circuit Court of the United States at Austin, Texas, and a judgment therein was rendered in favor of Russ against Telfener, the plaintiff in error, in July, 1893, for the sum of $518,440.50.

The latter thereupon took the case on writ of error to the United States Court of Appeals for the Fifth Circuit, where the judgment was affirmed in February, 1894.

He then filed a petition for rehearing in the Court of Appeals, which was overruled in May, 1894, and the case was afterwards removed into this court on petition of the plaintiff in error upon a writ of certiorari in October, 1894.

The plaintiff in error now submits, upon the writ of certiorari from this court, that there was manifest error in the rulings of the Circuit Court of Appeals requiring the reversal of its judgment, in this:

First. That the law of Texas expressly restricted the right of the applicant to purchase any portion of the unappropriated public lands of the State to six hundred and forty acres in one tract, and in this case the plaintiff claimed, and the Court of Appeals sustained his claim, that he had acquired a

right pursuant to the proceedings taken under the statute, to purchase one million one hundred and sixty thousand three hundred and twenty acres in one tract of the unappropriated lands of the State.

Second. That the evidence in the record shows that the alleged contract between the plaintiff in error and Russ was made on the first day of November, 1882, and that after that date Russ caused ninety-eight sections of the lands, embracing over sixty-two thousand seven hundred and twenty acres (the right or privilege to purchase which he pretended to have previously sold to the plaintiff in error) to be surveyed, and though, until such survey and its completion and return with map and field-notes to the commissioner of the General Land Office and filing of the same in that office, no right or privilege on the part of Russ to purchase any portion of the ninety-eight sections was initiated, the Court of Appeals held that Russ had a valuable and assignable right in those sections, whether the survey thereof and its field-notes were returned and filed in the General Land Office or not, directly in contravention of the third section of the statute of Texas, which declares that: "It shall be the duty of the surveyor, to whom application is made by responsible parties, to survey the lands designated in said application within three months from the date thereof, and within sixty days after said survey to certify to, record and map the field-notes of said survey; and he shall also, within the said sixty days, return to and file the same in the General Land Office, as required by law in other cases." And also in disregard of the forfeiture of any right acquired by Russ to purchase the lands for which he had applied, imposed by section nine of the statute of Texas, which declares in express terms that should any applicant for the purchase of public land fail, refuse or neglect to pay for the same at the rate of fifty cents per acre within the time prescribed in section five of this act, that is, within sixty days after the return to and filing in the General Land Office of the surveyor's certificate, map and field-notes of the land desired, he shall forfeit all right thereto, and shall not thereafter be allowed to purchase the same, but

the land so surveyed may be sold by the commissioner of the General Land Office to any other person, firm or corporation who shall pay into the treasury the purchase money therefor. And the evidence contained in the record shows the fact to be that out of the eighteen hundred and thirteen sections of land of which survey was desired, only the field-notes of a portion of the sections were returned and filed within the time required, yet the Circuit Court of Appeals held that it was wholly immaterial whether the surveys under the application of Russ were made and returned within the sixty days designated, or not returned at all, which ruling was plainly in disregard of the express provisions of the act of the Texas legislature, providing for the sale of any of the unappropriated public lands of the State.

Third. That the testimony contained in the record of the cause further shows that none of the sections which Russ alleged that he had requested to be surveyed, and had obtained a survey thereof, were surveyed on the ground, but that which was alleged to be a survey of the sections and returned as such consisted of work done in the office of the commissioner of the General Land Office and presented as a survey, and although it was held by the laws of Texas and the decision of its Supreme Court that the surveys of its unappropriated public land must be made on the ground, that the surveys not thus made were null and void, and did not confer upon the applicant any right of purchase, the Court of Appeals held that it was immaterial whether the surveys were actually made on the ground or consisted of office work.

Fourth. But assuming that the plaintiff finally pursued fully all the proceedings required to obtain a right to purchase of Texas the whole amount of her unapportioned lands claimed, namely, one million one hundred and sixty thousand three hundred and twenty acres, and the contract alleged between Russ, the plaintiff, and Telfener, the defendant, was made, yet such contract was conditional and dependent upon the performance by the respective parties of the conditions devolving upon each party at the time stipulated, and ceased to be binding upon either one on the failure of the other to

comply with the performance stipulated on his part.  Russ, the plaintiff, was to acquire of the State such interest in the property as would authorize him to sell and transfer to the defendant a valid title thereto, and to acquire such a valid title he was bound to make performance of his contract with the defendant by filing the surveys, map and field-notes of the whole within the prescribed time so that the defendant might have the right to demand patents of the State on payment of the purchase money of such property to its treasury, which he never did, and therefore released the defendant of all obligation to perform the alleged contract on his part. Authority for this position will be found in the cases of *Bank of Columbia* v. *Hagner*, 1 Pet. 455, 465; *Hill* v. *Grigsby & Smittle*, 35 California, 656; and *Englander* v. *Rogers*, 41 California, 420.

In *Bank of Columbia* v. *Hagner*, 1 Pet. 455, 464, this court, speaking by Mr. Justice Thompson of the distinctions made in covenants or promises of parties to a contract for the purchase and sale of real property, whether they were to be considered as independent or dependent, said: " It is evident that the inclination of courts has strongly favored the latter construction as being obviously the most just.  The seller ought not to be compelled to part with his property without receiving the consideration, nor the purchaser to part with his money without an equivalent in return.  Hence in such cases, if either a vendor or vendee wish to compel the other to fulfil his contract, he must make his part of the agreement precedent, and cannot proceed against the other without an actual performance of the agreement on his part, or a tender and refusal.  And an averment to that effect is always made in the declaration upon the contracts containing dependent undertakings, and that averment must be supported by proof."

In this case there was no offer or tender of performance by the plaintiff to the State, which was essential to create an obligation to pay any money on the part of the defendant. There is, therefore, no ground for recovery by the plaintiff upon his alleged contract with the defendant, there having been no such performance, or offer of performance, on his

part to the State as would enable him to acquire such an interest in the property that he could comply with his engagement to the defendant.

In *Hill* v. *Grigsby & Smittle*, the Supreme Court of California held that " in a contract for the sale of real estate, where the purchaser covenants to pay the purchase money, and the vendor covenants to convey the premises at the time of payment, or as soon as it is paid, the covenants are mutual and dependent, and neither can sue without showing a performance, or an offer to perform on his part. Performance, or an offer to perform on the one part, is a condition precedent to the right to insist upon a performance on the other part." 35 California, 656.

And in *Englander* v. *Rogers*, the same court held that " the obligations of the parties to an agreement for the sale of land are mutual and dependent, where one is to convey, and the other at the same time to pay the purchase money; and neither can put the other in default, except by tendering a performance on his part, unless the other party waives the tender, or by his conduct renders it unnecessary." 41 California, 420.

It is only upon the return and filing in the General Land Office as stated above, that any right to the land surveyed attaches to the applicant, and until such filing the State does not agree to part with any interest in the lands surveyed, and the purchaser does not acquire any.

Such was the decision of this court when the case was before it at the October term of 1891. 145 U. S. 522, 532. " An applicant," we there said, " under the laws of Texas, for the purchase of a portion of its unappropriated public lands, could acquire no vested interest in the land applied for, that is, no legal title to it, until the purchase price was paid, and the patent of the State was issued to him. If the price was not paid within sixty days after the return to the general land office of a map of the land desired and the field-notes of its survey, he forfeited all right to the land and was not thereafter allowed to purchase it." We added, however, " that he had the right to complete the purchase and secure a patent

within the prescribed period, *after the map and field-notes of the survey were filed* in the general land office," which is designated in the decisions of the Supreme Court of the State as a vested right that could not be defeated by subsequent legislation.

This reserved right, however, only applies where the map and field-notes of the survey have been previously filed in the general land office. No such reserved right could be asserted in the present case, for no such field-notes of all the lands were previously filed. The claim of Russ, the plaintiff below, was that he had an assignable right on November 1, 1882, to eighteen hundred and thirteen sections of land for which he had made application in October of that year. There are objections to recognizing that the field-notes of such alleged eighteen hundred and thirteen sections were filed before the expiration of three months. They were of no validity if not made on the ground, and it is not pretended that the field-notes were made by a survey on the ground, and it is not shown that they were made or could be made in any other way.

Each of the eighteen hundred and thirteen sections was to be in a tract of six hundred and forty acres. It appears by the record that the field-notes of the survey purport to have been made between the 13th of October and the 3d of November, 1882, except sections one to twenty-four. It is to be borne in mind that each section of six hundred and forty acres comprises a distance around it of four miles, and the eighteen hundred and thirteen sections, leaving out the twenty-four sections which are claimed to have been surveyed on the 9th of November, 1882, would embrace a circumference of seven thousand one hundred and fifty-six miles, and the survey of the twenty-four sections would have embraced ninety-six miles additional. No survey of land on the ground, of that extent, could have been made during the time designated. Neither the twenty-four sections, embracing ninety-six miles, could have been surveyed in one day — the 9th of November — nor the seventeen hundred and eighty-nine remaining, embracing seven thousand one hundred and fifty-six miles, in the twenty-

one days between the 13th of October and the 3d of November, 1892. Therefore, if any surveys were returned in such sections they must have been made up from office documents, and not by actual survey on the ground.

In *Jumbo Cattle Co.* v. *Bacon*, 79 Texas, 5, the Court of Civil Appeals of Texas decided that under the act of July 14, 1879, as amended by the act of March 11, 1881, providing that any person desiring to purchase any unappropriated land may do so by causing the tract which said person desires to purchase "to be surveyed" by the authorized public surveyor of the county in which the land is situated, a survey not actually made in the field, but copied from the field-notes of a prior survey on file in the surveyor's office, is not such a survey as is contemplated by the act of the legislature; and that such a survey does not entitle the proposed purchaser to a deed to the land.

The claim that the plaintiff below, Russ, had parted with valuable property, for which he was entitled to a judgment exceeding half a million of dollars from Count Telfener, for having transferred to him his hopes of securing a million acres of land from the State, for which he did not hold any promise or obligation of the State, does not merit consideration. As a claim it rests upon no solid foundation.

It follows that, for the errors stated,

*The judgment of the Circuit Court of Appeals should be reversed, and the judgment of the Circuit Court should also be reversed, and the cause remanded with a direction to set aside the verdict and grant a new trial, and it is so ordered.*