### H. M. PFANN & CO. v. J. C. TURNER CYPRESS LUMBER CO.

(Circuit Court of Appeals, Fifth Circuit. March 5, 1912.)

No. 2,235.

1. SALES (§ 71*)—CONTRACT TO SELL ALL LUMBER MANUFACTURED—CONSTRUCTION.

An agreement to sell all lumber manufactured by the seller during a certain period did not import a promise to keep the seller's mill in operation until the end of such period.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 71.*

Contracts for sale of things to be produced or manufactured, see note to Star Brewery Co. v. Horst, 58 C. C. A. 363.]

2. SALES (§ 88*)—CONTRACT TO SELL ALL LUMBER MANUFACTURED—ACTION FOR BREACH—QUESTION FOR JURY.

In an action for breach of the contract, it was error to submit such question to the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 248–250; Dec. Dig. § 88.*]

In Error to the Circuit Court of the United States for the Southern District of Florida.

Action at law by the J. C. Turner Cypress Lumber Company against H. M. Pfann & Co. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

The J. C. Turner Cypress Lumber Company brought suit against H. M. Pfann & Co. for breach of contract. The cause of action is set forth in the third count of the declaration in the following language:

"(3) Plaintiff further sues for that heretofore, to wit, in November, 1900, defendant entered into a certain contract with the plaintiff whereby defendants agreed to sell, and plaintiff agreed to buy, certain lumber then manu-

factured and also such lumber as might be manufactured by defendants from November 1, 1900, to November 1, 1901, all in accordance with certain terms and conditions in said contract set forth. And in pursuance thereof defendants did sell and deliver to plaintiff of said lumber then manufactured as aforesaid, to wit, 235,800 feet, and did manufacture and sell and deliver to the plaintiff in addition thereto, to wit, 1,231,812 feet. And thereafter on, to wit, the 12th day of November, 1901, defendants for a valuable consideration did agree to extend for two years ending November 1, 1903, the aforesaid contract theretofore existing between plaintiff and defendants, and defendants thereupon entered upon and continued the performance of their said last-mentioned agreements until the breach by defendants hereinafter mentioned; and plaintiff has always been ready to perform said agreement on its part and has performed the same except as it was excused from so doing by defendants' breach of said agreement hereinafter mentioned, and except as aforesaid all conditions were performed and all things happened and all times elapsed necessary to entitle the plaintiff to a performance of defendants' said agreement, and to maintain this action for the breach thereof hereinafter alleged. And on, to wit, the 1st day of April, A. D. 1903, defendants evinced an intention no longer to be bound by said contract and have since failed and neglected to perform the same, and the amount of lumber delivered by defendants to plaintiff under said contract was less than that contracted to be delivered by, to wit, 1,158,894 feet, which said lumber was of a value at the agreed time for delivery thereof exceeding the agreed price thereof by, to wit, $19,701.20."

That part of the contract mentioned, deemed material for consideration, reads as follows:

"This memorandum of agreement made this 15th day of November, 1900, by and between H. M. Pfann & Company, of Loughman, Florida, party of the first part, and the J. C. Turner Cypress Lumber Co., New York City, New York, part (party) of the second part, witnesseth: That the said party of the first part agrees to sell and the said part (party) of the second part agrees to buy all of the lumber of the grades and kinds hereinafter mentioned that has been manufactured by said party of the first part at their mill at Loughman, Florida, and put in complete piles in their yard at that place, up to November 1, 1900, and also such further lumber as may be manufactured by them from November 1, 1900, to November 1, 1901."

It appears from the record that, pursuant to the terms of the contract, Pfann & Co. delivered to the Cypress Lumber Company all lumber of the grades and kinds specified which had been piled up in their yard up to November 1, 1900, and also the lumber which they manufactured from November 1, 1900, to November 1, 1901. During the month of November, 1901, the parties by agreement extended their contract for the period of two years, as will appear by the following letter:

"Loughman, Fla., Nov. 12, 1901.

"J. C. Turner Cypress Lumber Company, New York, N. Y.—Dear Sirs: In answer to yours of the 7th in regard to extension of contract. In consideration of a loan of $6,000 made us July 6, 1901, we agree to extend for two years ending November 1, 1903, our contract made November 1, 1900.

"Truly yours,                                        H. M. Pfann & Co."

It is conceded by the parties that the contract referred to, as made November 1, 1900, was the contract hereinbefore set out, dated November 15, 1900. Pfann & Co. continued to manufacture and deliver lumber of the grades specified in the contract until about March 31, 1903, when they sold out their plant. The amount of lumber stipulated to be sold and delivered to the Lumber Company was about 25 per cent. of the output of Pfann & Co.'s mill.

The Lumber Company asserts the right to recover of Pfann & Co. damages for their failure to deliver lumber during the period of seven months, i. e., from March 31, 1903, to November 1st following. The demurrers interposed by Pfann & Co. to the third count of the declaration, the other three counts having been eliminated, were overruled by the court. Pfann & Co. then set up several defenses in pleas duly filed. Evidence was introduced and the cause was submitted to the jury under instructions. A verdict in favor of

the Lumber Company was returned, and judgment entered thereon; and to reverse the judgment Pfann & Co. prosecute error.

Charles M. Cooper and John C. Cooper, for plaintiff in error.

H. Bisbee and George C. Bedell (W. B. Owen, on the brief), for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge (after stating the facts as above). [1, 2] The decisive and only question, which we shall consider, arises upon the face of the contract and its extension as agreed upon by the parties. Regarding the terms of the contract as ambiguous, the trial court admitted testimony to explain the situation of the parties and then submitted the construction of the contract to the determination of the jury.

In failing to construe the contract itself and referring its construction to the jury we think the court committed error. If the contract, fairly construed, imposed no liability on the plaintiffs in error, there should have been a peremptory instruction in their favor. What construction then should be placed upon the instrument? To arrive at its proper meaning resort must be had to the phraseology of the original contract, since the subsequent agreement merely provided for its extension for two years ending November 1, 1903. The important words to be considered are the following: "The party of the first part agrees to sell and the party of the second part agrees to buy all of the lumber of the grades and kinds," etc., "and also such further lumber as may be manufactured by them" from November 1, 1901, to November 1, 1903. It is contended by the lumber company that the words employed required Pfann & Co. to operate their plant for the period of two years, and upon their failure to do so a cause of action accrued to it for breach of contract. On the other hand, Pfann & Co. insist that they did not contract away their right to sell the plant and that they were obligated to deliver such lumber only as might be manufactured by them while the mill was in operation.

We think that the latter construction is the proper one to place upon the contract. The words do not import a promise to keep the mill in operation, nor to manufacture any quantity of lumber during the two years. Lumber manufactured by the mill of the grades in the contract specified, it was the duty of Pfann & Co. to sell and deliver to the Lumber Company at the contract price. But the words referred to cannot, by any reasonable rule of interpretation, be so construed as to divest Pfann & Co. of the right to dispose of their property in their own way and at any time deemed advantageous to themselves.

To construe the words so as to deprive them of the right to sell the plant, there must be interpolated in the contract language which the parties themselves have failed to employ. In other words, we would thus make a contract for the parties which they have not made for themselves. A right so important as that of one to sell his own property should not be denied him unless the language employed clearly conveys that intention.

The views expressed are not without authority in their support. The case of Wemple v. Stewart, 22 Barb. (N. Y.) 154–161, is directly in point. At page 160 will be found the following language of the court:

"But I think that the referee erred in his construction of the second clause of the contract. It seems to me that by that clause the defendants did not obligate themselves to saw at their mill any spruce plank. The obligation extended no further than to require them, in case they elected to saw merchantable spruce plank at their mill during the ensuing winter, to deliver all such plank so sawed, at the yard of Gardinier & Van Denburgh. The agreement is to deliver all the merchantable spruce plank *that they may saw*, etc. These words are not promissory in their nature, except so far as relates to the delivery of plank which they shall saw during the ensuing winter; nor do they import a promise or undertaking to saw any particular, or any, quantity of merchantable spruce plank during the ensuing winter. To construe this clause of the contract as requiring the defendants to saw all the plank they should be able to saw the next winter, etc., would be making a new contract for the parties."

In Drake v. Vorse, 52 Iowa, 417, 418, 3 N. W. 465, 466, the contract construed was as follows:

"I hereby agree to make all the school seat castings that A. S. Vorse may want during the year 1873 at six cents per pound. * * * Payment cash on delivery."

At page 419 of 52 Iowa, at page 467 of 3 N. W., it was said by the court:

"Counsel differ widely as to the obligation which it imposes upon the defendant. It binds the plaintiff to make what castings the defendant may want. It does not expressly bind the defendant to anything except to pay in cash on delivery the prices specified. But conceding that it bound him to order and take of the plaintiff all the castings he should want, it could not, we think, have the effect to preclude him from entering into a partnership, nor would it become obligatory upon the firm. It was certainly the defendant's privilege to discontinue business at any time when it should appear to him that his interest demanded it, and that, too, without becoming liable to the plaintiff in damages. He did discontinue business upon his individual account. After that he did not individually want or need any castings, and, as the firm was not bound to take any, we do not think that the defendant became liable."

See, also, McKeever v. Iron Co., 138 Pa. 184, 16 Atl. 97, 20 Atl. 938; Gwillim v. Daniell, 2 Crompton, Meeson & Roscoe, 61; Bailey v. Austrian, 19 Minn. 535 (Gil. 465).

The words used in the present contract fall short of conveying the meaning insisted upon by the defendant in error. Under the contract, as we construe it, the plaintiffs in error had the right to sell their property without incurring liability for damages to the defendant in error. It follows that the judgment awarding damages to the latter for its breach is erroneous. It is therefore reversed, and the cause is remanded to the trial court with directions to proceed, upon a further hearing of the cause, in accordance with law and the views herein expressed.

Reversed and remanded.