**FOLEY LUMBER INDUSTRIES, INC.,**
Appellant,

v.

**BUCKEYE CELLULOSE CORPORA-
TION, Appellee.**

No. 18334.

United States Court of Appeals
Fifth Circuit.

Feb. 17, 1961.

Rehearing Denied March 29, 1961.

Chester Bedell, C. Harris Dittmar, Jacksonville, Fla., Bedell, Bedell & Dittmar, Jacksonville, Fla., of counsel, for appellant.

J. Lewis Hall, Tallahassee, Fla., Wm. A. Geoghegan, John E. McDowell, Cincinnati, Ohio, Dinsmore, Shohl, Dinsmore & Todd, Cincinnati, Ohio, Hall, Hartwell & Douglas, Tallahassee, Fla., of counsel, for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment entered upon a "Motion for Judgment on the Pleadings" which had been converted into a motion for summary judgment.[1] The summary judgment declared that a contract between the parties, dated May 4, 1953, "is now of no force and effect and neither party is under any obligation to the other with respect thereto."

Appellee Buckeye[2] first moves to dismiss the appeal on the ground that the record is incomplete and fails to include the depositions filed in the district court. In support of its motion to dismiss, the appellee cites In re Chapman Coal Company, 7 Cir., 1952, 196 F.2d 779, 785; T. V. T. Corporation v. Basiliko, 1958, 103 U.S.App.D.C. 181, 257 F.2d 185, 187; and McBee v. United States, 10 Cir., 1942, 126 F.2d 238. In the first two cited cases the appeal was not dismissed but the judgment was affirmed. In the last cited case the appellant did not designate any evidence whatever to be included in the record and thus failed completely to comply with Rule 75(a), Federal Rules of Civil Procedure. We agree with the Seventh Circuit that the appellee's remedy for any deficiency in the record "lies not in a motion to dismiss but in proper steps to have the record corrected under Federal Rule 75(h)." Shuttleworth v. Crown Can Co., 7 Cir., 1947, 164 F.2d 23, 25.[3]

Further, we agree with the appellant that the record is not deficient. The district court considered only those matters called to its attention on the motion for summary judgment.[4] It appears that all of the evidence called to the attention of the district court on that motion is included in the record. The motion to dismiss the appeal is therefore denied.

The contract of May 4, 1953, provided that, "Foley shall have the right of first refusal to purchase any sawtimber stumpage offered for sale by Buckeye for a period of fifteen (15) years from May 4, 1953." It further provided that, "Foley shall offer to Buckeye upon usual and customary terms all pulpwood obtained in connection with its lumbering operations, wherever conducted, at the then current market price to pulpwood dealers for pulpwood in the locality where said pulpwood is located."

Buckeye insists that the judgment of the district court declaring that contract "now of no force and effect" should be sustained upon one of several grounds. First, Buckeye claims that the contract was void ab initio for lack of sufficient consideration.

The contract expressly stated the considerations upon which it was based: "Now Therefore, in consideration of Five Dollars ($5.00) paid by Buckeye to Foley, receipt of which is hereby acknowledged,

1. "* * * If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 12(c), Federal Rules of Civil Procedure, Title 28 U.S.Code.

2. The appellee will hereafter be referred to as Buckeye and the appellant as Foley.

3. The pertinent part of the Rule reads: "* * * If anything material to either party is omitted from the record on appeal by error or accident or is misstated therein, the parties by stipulation, or the district court, either before or after the record is transmitted to the appellate court, or the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected, and if necessary that a supplemental record shall be certified and transmitted by the clerk of the district court." Rule 75(h), Federal Rules of Civil Procedure, Title 28, U.S.Code.

4. The Court: "We can't just simply take the whole file to New Orleans. The court certainly has not considered those matters which have not been called to its attention. * * * I think this can get out of hand. I am not going to let you introduce everything because the record is quite clear upon which I based my ruling on there * * *."

and in consideration of the premises and promises herein contained * *."

■ Whether or not Foley continued to engage in logging and lumbering operations, its promise while so engaged to offer to Buckeye all pulpwood obtained in connection with any such operations was sufficient consideration for Buckeye's promise to give Foley first refusal to purchase any sawtimber stumpage offered for sale by Buckeye. Each promisor bound himself not to sell any of its output to a third person before first offering it to the promisee. It is not necessary to refer to other promises and provisions of the contract of May 4, 1953, to hold, as a matter of law, that these two promises were sufficient consideration, the one for the other, to prevent the contract from being void *ab initio*.[5] Whether such a naked promise from Foley was the real consideration which the parties had in mind presents a question as to the meaning or construction of the contract presently to be considered.

Secondly, Buckeye insists that the two promises were so mutually dependent as that when Foley ceased to be engaged in any logging and lumbering operations, Buckeye was released from its promise to give Foley first refusal to purchase any sawtimber stumpage offered for sale by Buckeye; or, in other words, that Buckeye's promise was conditioned upon Foley's continuing to engage in logging and lumbering operations.[6]

We go first to the pertinent provisions of the written contract:

"2. Foley shall have the right of first refusal to purchase any sawtimber stumpage offered for sale by Buckeye for a period of fifteen (15) years from May 4, 1953. It is agreed that any timber purchased by Foley under the terms of this contract is to be harvested by Foley using his own employees unless agreements in writing are made between Buckeye and Foley for others to do the harvesting. The price for this stumpage is to be determined by Buckeye with proper regard for the current market price of sawtimber stumpage of similar type grade and accessibility in the same locality. If Foley does not accept any such offer, Buckeye shall be unrestricted in connection with sale to other parties at same price or higher than offered to Foley. Before sawtimber may be sold to other parties at a price less than that offered to Foley, it must first be reoffered to Foley at the lower price. Nothing herein contained shall, however, prevent or in any other manner limit Buckeye from trading any of its sawtimber stumpage for pulpwood stumpage or other property.

"3. Foley shall offer to Buckeye upon usual and customary terms all pulpwood obtained in connection with its lumbering operations, wherever conducted, at the then current market price to pulpwood dealers for pulpwood in the locality where said pulpwood is located. If Buckeye does not accept any such offer, Foley shall have the right, without restriction, to sell the same to others at same price or higher than offered to Buckeye."

■ If the terms of the written contract create legal obligations without any uncertainty as to the object and extent of the engagements, then under the law of Florida, as elsewhere, "it is conclusively presumed that the whole engagement and the extent and manner of their undertaking is contained in the writing." Gendzier v. Bielecki, Fla.1957, 97 So.2d 604, 608. The contract does not expressly state whether the two promises are dependent or independent. It

---

5. See Corbin on Contracts, pp. 522, 523, § 158; 1 Williston Contracts § 104A.

6. While, as hereinafter ruled, this insistence on the part of Buckeye, if sustained, would support the district court's declaration that the contract "is now of no force and effect," it would leave open the question of any breach on the part of Buckeye prior to Foley's abandonment of logging and lumbering operations.

does state that the promises constitute "consideration," and from that it may be inferred that the promises were expected to have some real substantial value. Further the provision " * * * that any timber purchased by Foley under the terms of this contract is to be harvested by Foley using his own employees, etc." made it necessary for Foley to remain in the logging business to some extent if he would exercise his option to purchase sawtimber.

Professor Williston states that " * * * the presumption in bilateral agreements, unless some reason can be shown to the contrary, is that the respective promises are for an agreed exchange, that is, are dependent." 3 Williston on Contracts (rev.ed.) § 825, p. 2312. In Bank of Columbia v. Hagner, 1828, 1 Pet. 455, 465, 26 U.S. 455, 7 L.Ed. 219, the Court said:

"Although many nice distinctions are to be found in the books upon the question, whether the covenants or promises of the respective parties to the contract, are to be considered independent or dependent; yet it is evident, the inclination of courts has strongly favored the latter construction, as being obviously the most just. The seller ought not to be compelled to part with his property, without receiving the consideration; nor the purchaser to part with his money, without an equivalent in return."

See also, Telfener v. Russ, 1896, 162 U.S. 170, 181, 182, 16 S.Ct. 695, 40 L.Ed. 930; Kelsey v. Crowther, 1896, 162 U.S. 404, 409, 16 S.Ct. 808, 40 L.Ed. 1017. In the Comment to A.L.I., Restatement Contracts, § 266, it is said:

"It cannot be supposed that parties would exchange unconditional promises, each promise being the consideration for the other, except on the assumption that they regarded the respective performances as also subjects of exchange. When parties enter into an ordinary bilateral contract, therefore, they contemplate a double exchange, first an exchange of promises and later an exchange of performances."

■ If we were to construe the written contract, without the aid of parol evidence, we would have to hold that the promises are dependent. In our opinion, however, the contract is not so certain and unambiguous as to preclude, as aids to its construction, evidence of the surrounding facts and circumstances to the end that the court can, so far as possible, view the contract from the positions of the parties at the time of its execution.

Before examining such evidence, however, we consider a preliminary insistence that the procedure followed by the district court wrongfully deprived Foley of a right to a trial by jury.

Actually a jury was empaneled. Prior thereto, the parties had taken some five hundred pages of depositions. Three pretrial conferences had been held, at the conclusion of which the court had undertaken to define the issues. After the jury had been empaneled, the record recites that: "Court and counsel had a discussion off the record and it was decided a further pretrial conference would be of benefit in the trial of the case."

In that conference Buckeye made a motion for judgment on the pleadings, which, as heretofore stated, was converted into a motion for summary judgment. Each of the parties was given full opportunity to present testimony on the question of the existence of disputed facts material to the issue of the interrelationship of paragraphs two and three of the agreement of May 4, 1953. The procedure was described by the district court as follows:

"Well, let me say here for the clarification of the record, and I am certainly sure, Mr. Bedell, whether the matter be judgment labelled or entitled judgment on the pleadings or not, the matter is before the court on a set of facts, which, if not in controversy, this court is authorized then and required as a matter of fact and has the

affirmative responsibility of entering a ruling of law. The pleadings, some of the matters in the pleadings have been alluded to and counsel for both sides have been given in this proceeding rather wide latitude, as has already been commented on, in putting in whatever they could, even remotely relevant to showing the relationship of the parties and to—on this particular i*sue—and the meaning and intention of the parties in drawing up, particularly, paragraphs 2 and 3 of the contract, limiting it to that particular issue. So there should not be any confusion as far as that is concerned as to where we stand and where we have at least come from at this point."

Foley had actual notice, and ample time to prepare to meet the questions presented by the motion. Being prepared to try the case, Foley does not claim that it was unprepared to prove the existence of disputed issues of fact. We do not agree with Foley's criticism of the procedure followed by the district court. See Dinwiddie v. Brown, 5 Cir., 1956, 230 F.2d 465, 468; Herron v. Herron, 5 Cir., 1958, 255 F.2d 589, 593.

Upon the hearing on the motion for summary judgment, Buckeye called attention to Foley's admission in its answer, "that at the time of the May 4, 1953 agreement was entered into it was actively engaged in a major logging and lumbering operation as alleged, etc."; that it "was in the process of constructing a new sawmill at Shamrock, Florida, etc." Foley further admitted that "the successful operation of its new mill at Shamrock, Florida, would require defendant to buy and cut large quantities of timber on lands owned by the plaintiff and others in the area, and all of this was well known to the plaintiff as well as to the defendant." Foley's answer further disclosed that in 1955 it sold its sawmill at Shamrock, Florida, and undertook to assign its rights under the May 4, 1953, agreement, but that Buckeye refused to permit it to assign

said rights and the assignment never became effective. Its President, Lester Foley, admitted by deposition that it never did conduct the lumbering operations contemplated at the time of the contract. It answered an interrogatory requesting it to list "the total number of all officers and employees in the employ of Foley Lumber Industries, Inc. on May 4, 1953 and on each anniversary of May 4, 1953 up to and including May 4, 1959" as follows:

"May 4, 1953, approximately 200 employees;
May 4, 1954, approximately 200 employees;
May 4, 1955, 4 employees;
May 4, 1956, 4 employees;
May 4, 1957, 4 employees;
May 4, 1958, 3 employees;
May 4, 1959, 3 employees."

Foley offered evidence that Buckeye's mill was not completed until late 1954 or early 1955, so that on May 4, 1953, Buckeye had no need for pulpwood. Foley introduced an earlier contract between it and Buckeye dated October 10, 1951, relating to Foley's management of timberlands acquired by Buckeye from P. C. Crapps & Son. That contract provided that, "When Buckeye's proposed pulp mill is in operation, Foley shall deliver so much of the pulpwood from Buckeye's Lands as Buckeye may direct to Buckeye's Mill, and Buckeye shall pay therefore (sic) on the same basis as outlined above, Paragraph 15." That contract was terminated by the agreement of May 4, 1953. Foley offered evidence that Buckeye had other areas and sources of getting pulpwood; that at Foley's request in the negotiations of the contract of May 4, 1953, Buckeye had agreed to the striking from paragraph 2 of a provision "but only for processing in its (Foley's) own sawmill." Foley's letter of objection to that provision read in pertinent part:

"* * * There was no thought by the parties that I should be required to process this stumpage in my own mill. If I am entitled to

**702**

first refusal to purchase sawtimber stumpage, what possible difference could it make to Buckeye whether I sold such logs or processed them * * *." [7] Foley proved also that the draft of the agreement at first had limited Foley's right of first refusal to purchase sawtimber stumpage to ten years, and that at Foley's request, this had been extended to fifteen years.[8]

At the conclusion of the hearing on the motion for summary judgment, the district court rendered the following oral opinion:

"We have had here a rather exhaustive discovery, pretrial motions, depositions, argument of counsel, following this matter. As a result of all that, the issue has come on before the court on the motion of plaintiff for a declaration of rights under a contractural (sic) agreement entered into May 4, 1953, and with particular reference to the consideration of paragraphs 2 and 3 of this contract, in the light of all the other provisions of the contract.

"The testimony here that has been admitted, if not absolutely and completely undisputed, is substantially undisputed on all material matters. The answer of the defendant, the depositions, and the testimony that was taken, leads the court to the conclusion that paragraphs 2 and 3 of this contract of May 4, 1953, are mutually dependent and that they are in fact the very core of the agreement.

"The quip pro co (sic) of the parties of the agreement, one to the other, saw timber, right of refusal from Buckeye to Foley, pulpwood right of refusal from Foley to Buckeye, the court has given consideration and particular attention to the

cases cited by defendant, the Pfann case referred to and the Dickerson case [Gulf Atlantic Towing Corp. v. Dickerson, 5 Cir., 271 F.2d 542] and with reference to the Pfann case (H. M. Pfann & Co. v. J. C. Turner Cypress Lumber Co., 5 Cir., 1912, 194 Fed. 69) the court does not by this ruling say that Foley has been placed upon it an affirmative burden to operate a lumbering operation, but the court does find that by these two agreements—Foley to offer pulpwood and Buckeye to offer saw stumpage on like terms—that the whole agreement would be utter meaningless and pointless and absolutely no consideration running to Buckeye for this operation. Without reference to the rather full testimony going to matters leading to the contract of 1953, the court finds this is true. Also, all the testimony with reference to other provisions of the contract and, also, the testimony with reference to the hardwood harvesting doesn't alter this finding but, in fact, tends to support the finding of the court in this regard:

"Therefore, the court will grant the motion and appropriate settle order will be presented by counsel and be filed in the case. This verbal order is now of record."

We agree with the district court that the evidence offered by Foley on the hearing of the motions for summary judgment did not prove the existence of any genuine issue as to any material fact, and that only one inference can reasonably be drawn from that evidence. The undisputed facts showed that Buckeye furnishing Foley a source of supply of sawtimber was to be in return for, and in effect conditioned on, Foley furnishing to Buckeye a source of

---

7. It may be remarked that Foley's selling of the logs instead of processing them would not have reduced the amount of pulpwood obtained in connection with Foley's lumbering operations and which should be offered to Buckeye for sale.

8. It may be noted that Foley's promise in paragraph 3 is unlimited as to time, if the two promises are construed to be entirely independent, and thus that is not a very reasonable construction.

supply of pulpwood. In the main, therefore, we agree with the judgment of the district court.

Foley's motion for an amendment of the judgment of the district court should, however, be granted to the extent of determining the time as of which the contract of May 4, 1953, became inoperative or ineffective, and as to whether evidence of Buckeye's breach of the contract while it was effective presents a genuine issue of fact which should be determined by the verdict of a jury. To that end the judgment dismissing Foley's counterclaim is reversed. The costs of appeal are taxed three-fourths against Foley and one-fourth against Buckeye.

Affirmed in part and in part reversed and remanded.

TUTTLE, Chief Judge (dissenting).

With deference I dissent. I agree that this case should have been disposed of on motion for summary judgment. However, I think it should have been disposed of by a judgment that the obligations of Buckeye were outstanding subsisting obligations.

I am unable to understand just what legal issue was decided by the trial court and I am equally unable to understand what legal principle has been applied by this Court to sustain the judgment below. The majority opinion seems to base its affirmance of the judgment on the proposition that clauses 2 and 3 express mutually dependent obligations. With that I agree fully. Moreover, the opinion seems to hold that the contract was valid when executed, and that all that was required to make it a valid contract was Foley's promise, *while engaged in logging and lumbering operations,* "to offer to Buckeye all pulpwood obtained in connection with any such operations," and the opinion holds that this promise "was sufficient consideration for Buckeye's promise to give Foley first refusal to purchase any saw timber stumpage offered for sale by Buckeye." I agree with all of this. Having done so, I then believe that this ends

our inquiry, because we have thus construed the language of clause 3 as merely requiring Foley to offer to Buckeye all pulpwood it obtains, and there was no requirement on Foley to continue in the logging or lumbering business to obtain pulpwood in order for it to insist on Buckeye's performance.

Now, however, the majority seems to confuse the doctrine of dependency of provisions with the entirely different one of failure of consideration. The Court seems to say that if the obligations are mutually dependent, then Foley was required to remain in a position to supply pulpwood to Buckeye. I think this has nothing to do with dependency, but is purely a matter of construing clause 3. All that the dependency principle requires is that before Foley can require performance from Buckeye it must be in performance of its obligations.

We thus come to a construction of clause 3 to determine what it required Foley to do. I understand that the majority agree with me in that it requires merely that if Foley obtains any pulpwood from logging and lumbering operations, it is required to furnish such pulpwood to Buckeye. On that construction Foley has no duty or obligation to "obtain" a cord of pulpwood. It has no obligation to stay in a business that would enable it to "obtain" any.

We are bound to assume that the parties knew what they were doing if each of them, assuming that they both "contemplated" staying in their respective business, was satisfied to agree, as the majority opinion seems to hold that they did, "not to sell any of its output to a third person before first offering it to the promisee."

The majority, however, holds that the sale of the mill by Foley or some other action by Foley somehow caused the contract to "become inoperative or ineffective." These are strange words in dealing with obligations under a written contract. The Court reaches them by a statement that "the undisputed facts showed that Buckeye furnishing Foley a source of supply of saw timber was to be

in return for, and in effect conditioned on, Foley furnishing to Buckeye a source of supply of pulpwood." This statement, without expressly saying so, simply repudiates or supplants the written contract, construed to mean the opposite, by referring to "the undisputed facts."

It seems to me that if the Court is construing the language of clause 3 to mean that if Foley obtained no pulpwood then it had no right to demand performance by Buckeye of its obligation, that should be said. The difficulty with that, I apprehend, is that the trial court could not have so construed clause 3 on a motion for summary judgment. This is true for Foley attempted to show that Buckeye was *not* looking to it as a source of supply of pulpwood from its logging and lumbering operations because Buckeye did not even have a pulpwood plant for something over a year after the contract was entered into, and because it knew that the logging and lumbering operations then carried on by Foley *would not* produce any pulpwood for Buckeye. Some of this evidence was rejected by the trial judge, who then ruled that the evidence was "undisputed."

However that may be, I think it plain that the majority, having correctly interpreted the contract as not requiring Foley's continued operation, abandons that interpretation when it appears that, after some subsequent act by Foley, it seemed inequitable for Foley to hold Buckeye to its admitted obligation. I know of no principle of contract law that permits a court thus to remake the agreement of the parties.

I agree that the judgment can not stand, and that under the construction adopted by the majority there must be a trial on the damages suffered by Foley prior to the time the Court finds that Buckeye's obligation became "inoperative or ineffective."

However, I think the judgment should be reversed and that judgment should be rendered in favor of the appellant holding that the obligations of Buckeye are still binding and subsisting so long as Foley carries out its promise to give Buckeye first refusal of any pulpwood obtained by it from its logging and lumbering business.